STATE OF CONNECTICUT *v.* MICHAEL D. WILLIAMS
(12797)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and BERDON, Js.

---

Argued October 9, 1986—decision released February 24, 1987

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*F. Patrick O'Sullivan,* special assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Michael D. Williams, was found guilty by a jury of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1).[1] In his appeal from the judgment[2] of conviction, he claims that (1) the evidence was insuffi-

---

[1] General Statutes § 53a-134 (a) (1) provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree, when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime."

[2] We have previously considered an appeal from a judgment in a post-trial habeas corpus proceeding brought by this defendant claiming that he was represented by ineffective counsel at his trial and have found no error

cient to support the finding of guilt made by the jury, (2) the trial court gave instructions upon statutory alternatives which were not supported by evidence as a basis for finding the defendant had committed robbery,[3] and (3) the trial court's instructions explaining the crime of robbery in the charge were inadequate and misleading. We find error and remand for a new trial.

From the evidence presented in the state's case-in-chief, the jury could reasonably have found the following background circumstances. On November 25, 1980, at approximately 10 p.m., the victim, a fifty-nine year old woman, was at a gas station on the corner of West Main Street and Thomaston Avenue, Waterbury, getting gasoline for her car. After the victim had replaced the hose on the pump, had paid for her gas, and was walking toward her car, she felt a "tug" on her pocketbook, a leather shoulder purse suspended by a long strap from her shoulder. After the "tug," her next

in that determination. *Williams* v. *Manson,* 195 Conn. 561, 489 A.2d 377 (1985). In that proceeding, no claim was made concerning the sufficiency of the evidence. The state concedes that the disposition of the prior habeas corpus proceeding does not bar consideration of the issues raised in the present appeal.

[3] The defendant argues that we should abandon the waiver rule which forecloses appellate review of the sufficiency of the state's case-in-chief whenever the defendant has elected to introduce evidence on his own behalf. *State* v. *Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984); *State* v. *Duhan,* 194 Conn. 347, 349–52, 481 A.2d 48 (1984); W. Maltbie, Connecticut Appellate Procedure § 212. At trial, the only evidence presented by the defendant was his own testimony that he had not committed the robbery. This testimony contains nothing to enhance the legal sufficiency of the evidence supporting the verdict. All of the evidence upon which the jury could reasonably rely in support of its verdict was that presented by the state. In *State* v. *Rutan,* supra, 442–43, we declined to reconsider the validity of the waiver rule, although we noted that "the rule has come under increasing attack as incompatible with the constitutional requirement of due process that the prosecution must introduce sufficient evidence to justify a conviction before the defendant may be required to respond." Id., 442–43. We stated that *Rutan* was an inappropriate case for reassessing the waiver rule because the state had sufficiently met its evidentiary burden. Id., 444–45. For the same reason, this case is an inappropriate case for reassessing the waiver rule.

recollections were of being lifted up, there being people around her, and that she was in an ambulance.[4] She first noticed that her pocketbook was missing when she was being transferred from the ambulance to the hospital emergency room. She did not see the person who had taken her pocketbook, but believed he had approached her from behind.

Several witnesses heard a noise or noises, variously described as "an exclamation," "a scream," a "loud slap," "lady noises" like "hi" or "a sort of a yell," and a "woman's voice, and then there was a loud noise like something hitting a car" which attracted their attention. Four of the five witnesses who described these sounds saw a man, subsequently identified as the defendant, with a purse in his hand, running swiftly from the gas pumping area where the victim was found lying on the ground. The victim was obviously injured in that she was disoriented, there was blood coming from the side of her nose, and there was a lump on the left side of her head. She had an "enormous, almost like an orange, bump on her forehead and she was . . . totally, completely disoriented."

A short time after the incident, the defendant was apprehended approximately one half mile from the gas station. At that time, he was breathing hard. The defendant was brought back to the scene of the crime by the police, and several witnesses identified the defendant as the same person whom they previously had seen running from the gas station.

The state also presented the testimony of a physician who had treated the victim. He testified that the victim had suffered a large bump on her forehead which

[4] The physician who treated the victim at the hospital testified that the victim "couldn't remember anything that had transpired from the time she remembered pumping gas until she got into the ambulance. She had lost consciousness during that period of time."

was accompanied by swelling and discoloration around the left eye. He posited that the injury had probably been caused by "some type of blunt instrument or a fist." He testified further that he meant by the term "blunt instrument" such objects as the "hard surface of the ground," "a gasoline island," or "the side of a car or something of that nature."

## I

The defendant's first claim of error is that the evidence was insufficient to support the finding of guilt made by the jury. The defendant does not contest the sufficiency of the evidence to support the verdict in respect to the identification of him as the person who had taken the victim's purse. Similarly, he does not question the adequacy of the medical testimony concerning the aggravating element of causing "serious physical injury" to a victim, as required for a conviction of robbery in the first degree. General Statutes § 53a-134 (a) (1). The focus of his insufficiency claim is based wholly upon the evidence related to proof of the essential element of robbery, that the actor must use or threaten "the immediate use of physical force upon another person for the purpose of: (1) preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner . . . to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133.[5] The state concedes that the evidence was not sufficient to sustain a conviction under the second

[5] General Statutes § 53a-133 provides: "ROBBERY DEFINED. A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

subsection, but maintains that it was adequate to satisfy the alternative definition of robbery contained in the first subsection. Considering the evidence in a light most favorable to sustaining the verdict, as we must; *State* v. *Crump,* 201 Conn. 489, 491, 518 A.2d 378 (1986); we conclude that the state has met its burden and that the jury could reasonably have concluded that the defendant was guilty of the crime of robbery in violation of § 53a-134 (a) (1).

"In determining whether the evidence is sufficient to sustain a verdict, 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' . . . '[T]he evidence presented at trial must be given a construction most favorable to sustaining the jury's verdict.' " *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981); see *Jackson* v. *Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979); *State* v. *Kish,* 186 Conn. 757, 767, 443 A.2d 1274 (1982). "Each essential element of the crime charged must be established by proof beyond a reasonable doubt"; *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); and " 'although it is within the province of the jury to draw reasonable logical inferences from the facts proven, they may not resort to speculation and conjecture.' " *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980); *State* v. *Little,* 194 Conn. 665, 671–72, 485 A.2d 913 (1984); *State* v. *Gabriel,* 192 Conn. 405, 421–22, 473 A.2d 300 (1984).

At the outset, we recognize the importance of circumstantial evidence in this case. "There is, of course, no legal distinction between direct and circumstantial evidence as far as probative force is concerned. *State*

v. *Wilson,* 178 Conn. 427, 434, 423 A.2d 72 (1979)."
*State* v. *Crump,* supra, 495. "The 'process of inference
is peculiarly a jury function, the raison d'etre of the
jury system.' *Pierce* v. *Albanese,* 144 Conn. 241, 256,
129 A.2d 606, appeal dismissed, 355 U.S. 151, 78 S.
Ct. 26, 2 L. Ed. 2d 21 (1957); see also *State* v. *Tatem,*
194 Conn. 594, 483 A.2d 1087 (1984). It is within the
province of the trier of fact to draw reasonable and log-
ical inferences from the facts proven, but it may not
resort to speculation and conjecture. *State* v. *Kish,* 186
Conn. 757, 768, 443 A.2d 1274 (1982); *State* v. *Tucker,*
181 Conn. 406, 418, 435 A.2d 986 (1980). Any infer-
ences drawn must be rational and founded upon the
evidence. *State* v. *Clemons,* 168 Conn. 395, 401, 363
A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46
L. Ed. 2d 80 (1975). The jury may base an inference
on facts it finds as the result of other inferences. *State*
v. *Gabriel,* supra, 425; *State* v. *McGinnis,* 158 Conn.
124, 130, 256 A.2d 241 (1969); *State* v. *Gonski,* 155
Conn. 463, 468, 232 A.2d 483 (1967); *State* v. *Hayes,*
127 Conn. 543, 555, 18 A.2d 895 (1941). In reviewing
inferences which the jury drew, our inquiry 'is directed
to whether, on the facts established and the inferences
reasonably to be drawn therefrom, the verdict can be
supported.' *State* v. *Avcollie,* 178 Conn. 450, 470, 423
A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S.
Ct. 667, 62 L. Ed. 2d 645 (1980); *State* v. *Benton,* 161
Conn. 404, 410, 288 A.2d 411 (1971); *State* v. *Hayes,*
supra. . . . In reviewing the jury verdict, it is well to
remember that '[j]urors are not "expected to lay aside
matters of common knowledge or their own observa-
tion and experience of the affairs of life, but, on the
contrary, to apply them to the evidence or facts in hand,
to the end that their action may be intelligent and their
conclusions correct." ' (Citations omitted.) *State* v.
*Scielzo,* 190 Conn. 191, 198 n.11, 460 A.2d 951 (1983),
quoting *Frankovitch* v. *Burton,* 185 Conn. 14, 22, 440
A.2d 254 (1981)." *State* v. *Little,* supra, 673–74.

The defendant concedes that the jury was justified in finding that physical force was used to remove the victim's purse from her shoulder and that "[i]t may also fairly be inferred that the force of that removal caused her to lose her balance and fall . . . ." He also concedes that the victim's injuries "can be said to have resulted from the use of physical force" and that her injuries "might demonstrate *excessive* force was used to remove the purse." (Emphasis added.) The defendant argues, however, that the jury was not justified in concluding that the force was used "for the purpose of . . . [p]reventing or overcoming resistance . . . ." General Statutes § 53a-133 (1). "[T]he word 'purpose' is synonymous with 'object' and 'intent.' " *State* v. *Kurvin,* 186 Conn. 555, 567, 442 A.2d 1327 (1982). Thus, the statute requires that the state prove that physical force was used by the defendant with the conscious objective or intention of preventing or overcoming resistance.

"The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence; *State* v. *Moynahan,* 164 Conn. 560, 579–80, 325 A.2d 199 (1973); and is, except in rare cases, a question of fact. See *Stevenson* v. *United States,* 162 U.S. 313, 314, 16 S. Ct. 839, 40 L. Ed. 980 (1896); *State* v. *Vars,* 154 Conn. 255, 263, 224 A.2d 744 (1966); cf. *State* v. *Cianflone,* 98 Conn. 454, 463, 120 A. 347 (1923)." *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980); see *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979); *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873 (1954). Intention is a mental process which, of necessity, must be proven either by the statements or

the actions of the person whose conduct is being examined. *State* v. *Mazzadra*, supra. Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide. *State* v. *Morrill*, 193 Conn. 602, 609, 478 A2d 994 (1984). Additionally, as one purse snatching case notes, "[r]esistance . . . need not emanate entirely from the victim. Rather, 'where the article stolen is so attached to the person or clothing of the victim that resistance is offered to the taking solely by reason of such attachment,' then the act of merely snatching property from another [can be considered robbery]." *Raiford* v. *State*, 52 Md. App. 163, 169, 447 A.2d 496 (1982), aff'd in part and rev'd on other grounds, 296 Md. 289, 462 A.2d 1192 (1983).[6]

From the evidence offered by the state, taken in the light most favorable to sustaining the verdict, we cannot say as a matter of law that the jury as the trier of fact could not reasonably have concluded that the defendant used physical force upon the victim for the purpose of "preventing or overcoming resistance to the taking

---

[6] The defendant places great stress on *People* v. *Chessman*, 75 App. Div. 2d 187, 429 N.Y.S.2d 224 (1980). *Chessman*, which is a purse snatching case, is unlike this case. In *Chessman*, the jury was confronted with two different versions of how the crime had been committed; we do not have that circumstance. That case was generated by the trial court's responses to jury questions regarding its instructions which concerned a crime which arose under a statute similar to General Statutes § 53a-133. *Chessman* is not particularly illuminating on the insufficiency of evidence issue for which the defendant cites it. In *People* v. *Chessman*, supra, 194–95, the Appellate Court held that the trial court's responses to the jury questions were "wholly inadequate and at no time were the jurors afforded such proper instructions as would enable them to undertake their fact-finding tasks with a full understanding of the law."

We do note that in a post-*Chessman* case construing the same statute, the court said: "Although . . . 'Physical force' [as used in the robbery statute is not defined by statute] a commonsense meaning can be readily ascribed, such as power or strength or violence, exerted against a body." *People* v. *Flynn*, 123 Misc. 2d 1021, 1023, 475 N.Y.S.2d 334 (1984).

of the [purse] . . ." as proscribed by § 53a-133 (1). One witness, who had been working as a part-time cashier at this gas station for approximately two years prior to this incident, testified that she stopped there just before this incident in order to buy some cigarettes and to visit with the cashier then on duty. As she drove in, her headlights shone upon the defendant who was in the act of "stepping" toward the pumps from the darkened lot. He stopped and faced her car, turned away and then he walked back to where he was originally standing. As to the position he resumed, she said: "Nobody ever stood at that corner of the lot. It was unusual." She then went into the cashier's booth and greeted the cashier. "[M]aybe forty-five seconds" later, she heard a scream after which someone came to the booth asking that the police be summoned. She identified the defendant shortly thereafter at the scene when he was brought there in a police car. The station itself was well lighted at this time.

There was also evidence that prior to pumping the gas for her car, the victim took her purse from the car, put it on her left shoulder and went to the booth and paid for the gas. Her purse, she said, was "a shoulder bag designed to be worn on [the] shoulder . . . it has a rather long strap." After she pumped her gas and as she was walking toward her car, she felt a "tug" on her purse. Her medical examination that night at the hospital disclosed, inter alia, "a black and blue [mark] over her left shoulder." Additionally, there were at least six persons at the gas station at the time of this incident, three of whom were customers, two men and the victim. One of the customers heard a woman's voice and then a "loud noise like someone hitting a car or something like [that]." This directed his attention "to the last bay" from which he saw a black male "run out" and away, holding a purse "in his hand by the strap." The victim was rendered helpless, lying on the

ground badly injured and disoriented. The large lump over her left eye, according to the medical expert, was "likely" caused by some type of "blunt instrument or a fist."

From this evidence, together with the earlier circumstances we have set out, the jury could have determined that this defendant came to this well lighted gas station bent on criminal conduct and that the defendant was not concerned with the stealth often associated with some purse snatchings. The issue swirls around the purpose for which the force was used. The jury could have inferred reasonably that the defendant, after having first observed and then selected this woman as his victim, knew that he could not disengage the purse, even with his superior strength and speed, without some prevention or resistance to his doing so, at the very least by its position on her left shoulder. It could also reasonably have inferred that he consciously intended to wrench the purse from her shoulder under the circumstances. The victim had, among her other injuries, a black and blue mark on her left shoulder, which the jury could reasonably have inferred resulted from the force which was necessary to be exerted because of the resistance the strap offered to the wrenching maneuver. See *Raiford* v. *Maryland,* supra.

There is no question, as we have pointed out, that intent is almost always evidenced by circumstantial evidence. Justice Jackson put it this way: "Environment illuminates the meaning of acts, as context does that of words. What a man is up to may be made clear from considering his bare acts by themselves. . . ." *Cramer* v. *United States,* 325 U.S. 1, 33, 65 S. Ct. 918, 89 L. Ed. 1441 (1944). This was not a purse snatching or ordinary theft from the person by stealth or cleverness; rather it was perpetrated by one who was willing to use that degree of force necessary to prevent or overcome resistance to his criminal objective by taking her

purse against her will; this could reasonably be inferred by the jury. We realize that this jury was dealing with questions of human conduct and not with matters that are susceptible of scientific or mathematical certainty, but it was dealing in making deductions that in our view were not only guided by human experience and common sense, but most importantly by reasonable inferences from all the evidence. " 'It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence.' " *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984), quoting *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981).

The defendant claims that the evidence supports the following hypothesis, inconsistent with guilt: "The defendant used physical force to grab the victim's purse, intending to use force to remove the purse from [the victim's] shoulder but having formed no intent to use force to prevent or overcome resistance." The defendant argues that the evidence supports the hypothesis that the defendant's purpose in using physical force was simply limited to removing the purse from the victim's shoulder, and that "any spill-over of force" inflicted on the victim was unintended. The defendant asserts, therefore, that because the evidence supports a rational hypothesis which is inconsistent with the defendant's guilt of the crime of robbery, the defendant's conviction cannot stand.

" ' " 'A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' *State* v. *Foord,* 142 Conn. 285, 295, 113 A.2d 591 [1955]; *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151 [1970]; *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258 [1966]; *State* v. *Annunziato,* 145 Conn.

124, 136, 139 A.2d 612 [1958]." *State* v. *Mayell,* [163 Conn. 419, 427–28, 311 A.2d 60 (1972)].' *State* v. *Payne,* 186 Conn. 179, 184, 440 A.2d 280 (1982). ' "But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition." (Citations omitted.) *State* v. *Foord,* supra, 294–95; see *State* v. *Payne,* [supra] . . . . "Emphasis needs to be placed on the distinction between the word 'reasonable' and the word 'possible.' . . . Proof of guilt must exclude every reasonble supposition of innocence. . . . '[A] mere "possible hypothesis" of innocence will not suffice.' " (Citations omitted.) *State* v. *Englehart,* 158 Conn. 117, 121–22, 256 A.2d 231 (1969).' *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984); see *State* v. *Foord,* supra, 295; *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582 (1942). While proof of guilt must exclude every reasonable supposition of innocence, it need not exclude every possible supposition of innocence. *State* v. *Englehart,* supra, 121." *State* v. *Little,* supra, 671–72.

We conclude that the victim's testimony concerning the "tug" on her pocketbook, the evidence of her fall, together with the testimony of the witnesses and the treating physician are sufficient to support the verdict. The defendant's "hypothesis" of an "unintended" application of force to the person of the victim, although a "possible supposition of innocence," is not a "reasonable supposition of innocence." The defendant's "hypothesis" is inconsistent with his conduct. We conclude, therefore, that the requisite standard of proof with respect to the essential elements of robbery; General Statutes § 53a-133; was satisfied.

## II

The defendant's second claim of error is that the court erred in charging the jury under subsection (2)

of § 53a-133 when there was no evidence to support the charge. As previously noted, the state presented evidence to support the defendant's conviction under subsection (1) of that statute. During the court's charge, however, the court instructed the jury on two occasions, in accordance with subsection (2), that it could find the defendant guilty of robbery if it found, inter alia, that the defendant used or threatened the use of physical force for the purpose of compelling the owner of property to deliver up the property. The state maintains that from the testimony of all the witnesses, it was clear that the theory upon which the state was prosecuting the defendant was that the defendant used physical force for the purpose of preventing or overcoming resistance to the taking of the property in question or to the retention of it immediately after the taking. Pointing to the rule that a challenged jury instruction must be viewed from the standpoint of its effect on the jury in guiding them to a proper verdict; *State* v. *Marra,* 195 Conn. 421, 441, 489 A.2d 350 (1985); the state argues that "there was simply no chance that the jury could have been misled into believing that the force was used to compel the owner of property to deliver it up."

We must first consider whether this issue was properly preserved for review. The defendant did not except to the court's instructions at the trial. "We generally do not consider a claimed error regarding the giving of or failure to give an instruction 'unless the matter is covered by a written request to charge or exception has been taken . . . immediately after the charge is delivered.' Practice Book § 852 (formerly § 54); see *State* v. *Fullwood,* 193 Conn. 238, 259, 476 A.2d 550 (1984); *State* v. *Alston,* 5 Conn. App. 571, 573, 501 A.2d 764 (1985), cert. denied, 198 Conn. 804, 503 A.2d 1186 (1986). In addition, the exception taken must 'state distinctly the matter objected to and the ground of objection.' Practice Book § 852." *State* v. *Hill,* 201 Conn. 505, 512, 518 A.2d 388 (1986).

Because this procedure was not followed, we need not consider the defendant's challenge to the court's instructions unless the record adequately supports a claim that he has been denied a fundamental constitutional right and a fair trial. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). "An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." *State* v. *Hill,* supra, citing U.S. Const., amend. XIV; Conn. Const., art. I, § 8; see *In re Winship,* 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Smith,* 194 Conn. 213, 217, 479 A.2d 814 (1984). This court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial. See, e.g., *State* v. *Hill,* supra, 512–13; *State* v. *Zayas,* 195 Conn. 611, 616, 490 A.2d 68 (1985); *State* v. *Smith,* supra. We therefore will review the defendant's second claim of error.

On more than one occasion, this court has stated that "[w]here a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon." *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983); *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); *State* v. *Asherman,* 193 Conn. 695, 730, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984); see *State* v. *Silveira,* 198 Conn. 454, 459, 503 A.2d 599 (1986).[7] This rule is based

---

[7] In *State* v. *Duhan,* 194 Conn. 347, 481 A.2d 48 (1984), we faced the same issue but in a different posture. In that case, the state urged this court to

on the principle that jurors are presumed to follow the instructions given by the judge. *State* v. *Barber,* 173 Conn. 153, 156, 376 A.2d 1108 (1977); *State* v. *DellaCamera,* 166 Conn. 557, 567, 353 A.2d 750 (1974). By instructing the jury on the second subsection of § 53a-133, the judge authorized the jury to consider this theory of criminality, thus clearly implying that there was a factual question for them to resolve under that subsection of the statute. The state concedes that there was *no* evidence to support a theory that force was used to compel the victim to give up the purse. "The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982). We cannot presume that the jury rejected this issue because of the absence of evidence. See *State* v. *Reid,* supra, 667 n.22.

The trial court, therefore, erred in instructing the jury on a statutory alternative for which there was no supporting evidence. The judgment must be set aside and a new trial ordered. See *State* v. *Marino,* supra.

---

disavow *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983), and hold, instead, that a finding of guilty can always be sustained if there is sufficient evidence of any one of several alternatives charged conjunctively in the information. In *State* v. *Duhan,* supra, 353, we refused to agree with the state's argument in the "unconditional manner in which it [was] asserted." We concluded, nonetheless, that, because of the procedural posture of that case, the conviction would not be overturned on that ground. Id. The procedural posture of the present case is distinguishable from *Duhan.* *Duhan* involved a case that went from the trial court to the Appellate Session of the Superior Court and then to this court. At no time prior to the appeal to this court did the defendant in *Duhan* raise this issue. Additionally, in *Duhan* we pointed out that the defendant failed to raise this issue when she challenged the sufficiency of the evidence at the close of the state's case. In this case, the defendant had no reason to raise this claim in his motion made at the end of the state's case because there was concededly no evidence at all on this statutory alternative, General Statutes § 53a-134 (a) (2), nor was that subsection ever included in the bill of particulars filed by the state which was confined to § 53a-134 (a) (1).

## III

The defendant's final claim of error is that the jury instructions explaining the purpose for which physical force had to be used to constitute a robbery were so defective as to deprive him of his rights to an adequately instructed jury, a fair trial, and to be convicted only upon proof beyond a reasonable doubt. The defendant argues that "it is reasonably possible that the jury was misled . . . into misunderstanding an issue that has fundamental constitutional significance." *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985). We need not address this claim because it is not likely to recur upon retrial.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion PETERS, C. J., and BERDON, J., concurred.

SHEA, J., with whom CALLAHAN, J., joined, dissenting. I disagree with the conclusion in part I of the opinion that the evidence was sufficient to support the verdict. Accordingly I would not reach the issues concerning error in the charge that are discussed in part II.

Although there was ample evidence in this case that the defendant stole the victim's purse and that she was seriously injured during the incident, there is insufficient evidence that the defendant used "physical force" upon the victim "for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking," as General Statutes § 53a-133 (1) requires for a robbery conviction. Several witnesses observed the defendant before he seized the purse and afterward, when he ran from the scene of the crime, but the victim's testimony that she felt a "tug" on her pocket-

book as the last thing she remembered before she fell is the only direct evidence relating to whether the defendant used physical force for the purpose of preventing or overcoming her resistance to the theft.

The inferences the majority opinion seeks to draw from the injuries sustained by the victim as to the defendant's intentional use of force are speculative at best because all her injuries can readily be explained as having resulted from her fall to the pavement where she was found or the impact of her body with the car beside which she had been standing, creating the "loud noise like something hitting a car" that one witness heard. The other sounds relating to a woman's exclamation or scream, which several witnesses heard, may also have been occasioned by the fall or by some impulsive outcry when the theft occurred. These alternative explanations of the victim's injuries and her outcry are no less probable than the inference of the majority that the defendant assaulted her with his fist or intentionally pulled the purse from her forcefully in order to prevent or overcome her resistance.

From the victim's testimony that just before her fall she felt a tug on her purse, which was attached to her shoulder by a long strap, the jury could reasonably have inferred that the defendant had applied force to her person through the medium of the strap when he seized the purse. The description of that force as a "tug," however, is inadequate to justify an inference that the defendant used force for the purpose of preventing or overcoming resistance rather than simply to slip the purse from her shoulder. "If a person intended to lift a purse or pick a pocket, silently and surreptitiously and with the utmost gentility but tripped accidentally in the process, knocking the victim to the ground, it could not be said that this constituted robbery or attempted robbery." *People* v. *Chessman,* 75 App. Div. 2d 187, 194, 429 N.Y.S.2d 224 (1980). The fact that the

defendant should have perceived that the purse was attached by a strap to the victim's person and that a substantial risk of injury would be created by attempting to steal it, so that his conduct might well be characterized as reckless, does not satisfy the statutory requirement for an intentional use of force to prevent or overcome resistance. Only when a person's "conscious objective is to cause such result or to engage in such conduct" does he act intentionally in respect to a particular result or conduct described by a statute defining an offense. General Statutes § 53a-3 (11); *State v. Kurvin,* 186 Conn. 555, 567, 442 A.2d 1327 (1982); see General Statutes §§ 53a-3 (13), 53a-61 (a) (2).

We have consistently held, in a series of single vehicle accident cases where there was no evidence of which of several possibilities had brought about the occurrence, that the standard of proof in civil cases, more probable than not, had not been satisfied. *Boehm* v. *Kish,* 201 Conn. 385, 517 A.2d 624 (1986); *Meade* v. *Warehouse Transport, Inc.,* 165 Conn. 553, 338 A.2d 111 (1973); *Toomey* v. *Danaher,* 161 Conn. 204, 286 A.2d 293 (1971); *Chasse* v. *Albert,* 147 Conn. 680, 166 A.2d 148 (1960). We have not permitted juries to rely upon one of several possible explanations of an accident unless the one selected stands out sufficiently from the others to warrant an inference that it is at least probable. See *Boehm* v. *Kish,* supra, 391–92; *Palmieri* v. *Macero,* 146 Conn. 705, 707–708, 155 A.2d 750 (1959). It is incongruous that in a criminal case, where the standard of proof beyond a reasonable doubt demands that evidence excluding nonculpatory explanations of the event be far more persuasive than in civil cases, the majority opinion permits the guilty finding to rest upon such inferences as can be drawn from a tug on the victim's purse and the injuries she received in the ensuing fall. In criminal cases we have repeatedly said that the requirement of proof beyond a rea-

sonable doubt means that the evidence must exclude every reasonable hypothesis of innocence. *State* v. *Little,* 194 Conn. 665, 672, 485 A.2d 913 (1984); *State* v. *Morrill,* 193 Conn. 602, 610–11, 478 A.2d 994 (1984). "It is, of course, true . . . that any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail." *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955). The victim's testimony concerning the "tug" on her pocketbook, together with the evidence of her fall, cannot reasonably be said to exclude beyond a reasonable doubt the hypothesis of an unintentional, though perhaps reckless, application of force to the person of the victim by the defendant. I am constrained, therefore, to conclude that the requisite standard of proof in a criminal case was not satisfied with respect to the essential element that force be used "for the purpose of" preventing or overcoming resistance to the taking or retention of the property, as required for the offense of robbery. General Statutes § 53a-133.

By affirming the defendant's conviction of robbery upon the nebulous evidence of intentional use of force presented in this case, the majority opinion simply invites prosecutors to treat every purse snatching incident as a robbery rather than as a theft from the person constituting larceny in the second degree in violation of General Statutes § 53a-123. The worst aspect of this practice is that when only a single count of robbery is presented in an information without specifying that property was taken from the victim's person, as in the case before us, a jury has no opportunity to render a verdict upon the lesser offense of theft from the person, because that crime is not necessarily included within a general robbery charge. When jurors are faced with the choice of acquitting a defendant, whose involvement in a purse snatching has been determined, or of finding him guilty of robbery as charged,

they are likely to choose to convict despite any reservations about the adequacy of proof of intentional use of force. "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of the conviction." (Emphasis in original.) *Keeble* v. *United States,* 412 U.S. 205, 212–13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973); *State* v. *Bond,* 201 Conn. 34, 38, 513 A.2d 95 (1986). By allowing a robbery conviction to stand where the evidence of the intentional use of force for the purposes required by the statute is so flimsy as in this case, we condone this prosecutorial failure to present a more appropriate crime for consideration by the jury.

Accordingly, I dissent.