## STATE OF CONNECTICUT *v.* RONALD OWENS (12777)

Foti, Lavery and Landau, Js.

Argued February 9—decision released August 29, 1995

*Brigid Donohue*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Herbert E. Carlson, Jr.*, supervisory assistant state's attorney, and *Kimberly A. Graham*, assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of, inter alia, burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). The defendant has not challenged his conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). The defendant claims on appeal that he is entitled to a new trial on the charges of (1) burglary in the first degree because the trial court instructed the jury on a theory of culpability that was unsupported by the evidence, and because the trial court instructed the jury that it could convict the defendant for engaging in conduct that did not constitute that crime, and (2) robbery in the first degree because the trial court instructed the jury that it could convict the defendant for engaging in conduct that did not constitute that crime.

The jury could reasonably have found the following facts. On June 9, 1992, at approximately 2:30 a.m., the victim was awakened by the buzzer to her Hartford apartment. The victim looked out a window and saw the defendant, who was her godfather and a friend of her family. The defendant said that he wanted to talk to her and to give her some money for her mother. The victim pushed the buzzer in her apartment to unlock the front door to the apartment building.

The defendant entered the building and came up the stairs. When the victim unlocked the door to her apart-

ment, he pushed his way in and asked the victim whether she was alone. The victim replied that she was not alone. The defendant than asked if he could have some water. The victim told the defendant to get the water himself and she went to her bedroom to put on sweatpants.

The defendant came up behind the victim in her bedroom saying that he knew that she was alone and that he intended to rape her. He choked her with one hand and held a knife in the other. The victim recognized the knife as one of her steak knives. Despite the victim's protests, the defendant forced the victim onto the bed, removed her clothing and sexually assaulted her.

After the sexual assault, the defendant asked the victim for money. The victim went to the hall closet, with the defendant still choking her, and gave him "a dollar and something" from her coat pocket. The defendant then asked the victim if she had any more money. The victim replied that she might have some money in her wallet. The defendant then brought the victim back into her bedroom where she took $10 from her pocketbook and handed it to the defendant. At that time, the defendant was still holding the knife in his hand. The entire incident lasted approximately fifteen to twenty minutes.

I

The defendant first claims that he is entitled to a new trial on the charge of burglary in the first degree because the trial court instructed the jury on a theory of culpability for which there was no evidence. We disagree.

There are two theories under which the defendant could have been convicted of burglary in the first degree. The state charged that the defendant committed burglary in the first degree when he committed all the elements of simple burglary and "entered and remained unlawfully . . . and was armed with a dangerous

instrument, a knife." The defendant could therefore have been convicted under the theory that he was armed with a dangerous instrument when he entered unlawfully or under the theory that he was armed with a dangerous instrument when he remained unlawfully. The state presented evidence at the trial that established that the defendant obtained the knife used in the incident from the victim's kitchen after he was already inside the apartment. The state presented no evidence from which a jury could have reasonably concluded that the defendant had the knife in his possession when he entered the apartment.

The trial court then instructed the jury that it could convict the defendant if it found that he was armed with a dangerous instrument while entering the building unlawfully or armed with a dangerous weapon while remaining unlawfully in the building. The trial court made this instruction despite the lack of evidence that the defendant was armed with the knife when he entered the apartment. The trial court, in effect, instructed the jury that it could convict the defendant on a theory of culpability for which no evidence was presented.

The state claims that this issue should not be reviewed as this claim was not preserved at trial. The defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). As the defendant's claim does not meet the second prong of *Golding*, that the claim must be of constitutional magnitude alleging the violation of a fundamental right, this claim should not be reviewed.

The defendant argues that the Supreme Court has concluded that an unpreserved claim in which the jury was instructed on an alternative theory of culpability for which there was insufficient evidence is reviewable because that claim implicated a constitutional right. See

*State* v. *Allen*, 216 Conn. 367, 388, 579 A.2d 1066 (1990); *State* v. *Williams*, 202 Conn. 349, 363, 521 A.2d 150 (1987). Recently, however, our Supreme Court held that such claims do not implicate a constitutional right. *State* v. *Chapman*, 229 Conn. 529, 539–44, 643 A.2d 1213 (1994).

In *Chapman*, the trial court instructed the jury that it could convict the defendant of sexual assault in the first degree if it found that he had forced the victim to engage in sexual intercourse while he either used force or threatened to use force against her. Id., 536. No evidence was presented at trial to prove that the defendant had threatened the use of force, although evidence was presented that the defendant had used force. Id., 536 n.5. In this case, our Supreme Court concluded that the instruction was not a federal due process violation, but was merely an instructional error. Id., 539.

In *Chapman*, the Supreme Court relied on *Griffin* v. *United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), noting: "When . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence . . . ." (Internal quotation marks omitted.) *State* v. *Chapman*, supra, 229 Conn. 539. The court further noted: "It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." (Internal quotation marks omitted.) Id., 540.

Our Supreme Court found that the claim that the jury was instructed on an alternative theory of liability for which there was insufficient evidence did not implicate the defendant's federal due process rights. The present claim, therefore, is not of constitutional magnitude and fails the second prong of *Golding*. We will not review this claim.

## II

The defendant next claims that he is entitled to a new trial on the charge of burglary in the first degree because the trial court instructed the jury that it could convict the defendant for engaging in conduct that did not constitute that crime. He asserts that the balance of the trial court's charge failed to cure this misstatement of law. We agree and reverse the judgment of the trial court.

Although the defendant did not preserve this claim at trial, we will review it on appeal. It is a fundamental constitutional right to be convicted of a crime only upon proof beyond a reasonable doubt of all the essential elements of the crime. U.S. Const., amend. XIV; Conn. Const., art. I, § 8; *In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Our Supreme Court has held that a claim that the trial judge improperly instructed the jury on the elements of an offense is reviewable even if not raised at trial. *State* v. *Williams*, supra, 202 Conn. 363; *State* v. *Hill*, 201 Conn. 505, 512–13, 518 A.2d 388 (1986); *State* v. *Zayas*, 195 Conn. 611, 616, 490 A.2d 68 (1985). We will therefore review this claim.

General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . [h]e is armed with . . . [a] dangerous instrument . . . ." After the trial court gave its instruction on the elements of simple burglary, it gave the following instruction on the elements constituting first degree burglary. "Additionally,

since this is a charge of burglary in the first degree, you must find that the defendant, at the time of the acts charged, was armed with a dangerous instrument. This means that at some point of entering or remaining in the building, *or in immediate flight from it,* had actual physical possession of a dangerous instrument." (Emphasis added.)

The trial court's instruction thus allowed the jury to convict the defendant of first degree burglary if it found that he was armed with a dangerous instrument: (1) while entering the building unlawfully, (2) while remaining in the building unlawfully, or (3) while in immediate flight from the building. The instruction is problematic as the third part of the instruction does not describe conduct that constitutes the crime of first degree burglary. The language of the first degree burglary statute does not proscribe such conduct. In other words, a person who commits all the essential elements of simple burglary and is armed with a dangerous instrument when in immediate flight from the building has *not* committed burglary in the first degree.

In a case very similar to the one at hand, our Supreme Court found the jury instruction improper. In *State* v. *Belton,* 190 Conn. 496, 509–10, 461 A.2d 973 (1983), the court held: "By instructing the jury that they could find the requisite aggravating circumstance within the meaning of § 53a-101 (a) (1) if they concluded that the defendant has actual physical possession of a dangerous instrument *while in immediate flight from the building,* the trial court impermissibly enlarged an essential element of the crime as charged within the information." (Emphasis added.)

Even if we conclude that the charge was improper, our analysis does not end there. The test we apply is whether it is reasonably possible that the jury was misled. *State* v. *Johnson,* 188 Conn. 515, 527, 450 A.2d 361

(1982). "In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. *State* v. *Estep*, 186 Conn. 648, 651–52, 443 A.2d 483 (1982); *State* v. *Harris*, 172 Conn. 223, 226, 374 A.2d 203 (1977); *Farlow* v. *Connecticut Co.*, 147 Conn. 644, 648, 166 A.2d 202 (1960); *Amato* v. *Desenti*, 117 Conn. 612, 617, 169 A. 611 (1933). The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Reed*, 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Holmquist*, 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy*, 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Mullings*, 166 Conn. 268, 274–75, 348 A.2d 645 (1974). *State* v. *Estep*, [supra, 652]. *State* v. *Maturo*, 188 Conn. 591, 599, 452 A.2d 642 (1982). *State* v. *Jasper*, 200 Conn. 30, 37, 508 A.2d 1387 (1986). . . . *State* v. *Dyson*, 217 Conn. 498, 501–502, 586 A.2d 610 (1991). The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *Williams*, 182 Conn. 262, 269, 438 A.2d 80 (1980). *State* v. *Fuller*, [199 Conn. 273, 279, 506 A.2d 556 (1986)]. . . . *State* v. *Anderson*, [227 Conn. 518, 532, 631 A.2d 1149 (1993)]." (Internal quotation marks omitted.) *State* v. *Ash*, 231 Conn. 484, 493–94, 651 A.2d 247 (1994).

The chance that the jury was misled by the instruction on "immediate flight" is very possible in the case at hand because of the evidence submitted and arguments presented on that point. The state presented testimony

that the knife was never recovered from the victim's apartment, justifying an inference that the defendant fled the apartment with the knife. The state admitted into evidence a knife from the same set because the actual knife was not available. Defense counsel stated in closing that the proof of the crimes was minimal, citing the fact that no knife had been recovered. The state in closing stated that, "relating to no knife and no money, well, you know, that's because the defendant took them with him." After hearing the evidence and closing statements, the jury was then instructed that a finding that the accused had fled the building with the knife was sufficient evidence for conviction of first degree burglary.

By instructing the jury that it could convict the defendant of first degree burglary if it found that he was armed with a dangerous instrument while in immediate flight from the building, the trial court permitted the jurors to convict the defendant of first degree burglary for conduct that did not constitute that crime. Thus, this first degree burglary conviction might have been based on the jury's finding of circumstances clearly not punishable as first degree burglary.

### III

The defendant next claims that he is entitled to a new trial on the charge of robbery in the first degree because the trial court instructed the jurors that they could convict the defendant for engaging in conduct that did not constitute that crime. We agree and reverse the judgment. Although this claim is unpreserved, for the reasons set forth in the previous claim, we will review this claim as well.

General Statutes § 53a-134 (a) sets forth several distinct ways of committing first degree robbery. The state charged the defendant under subdivision (3), "uses or

threatens the use of a dangerous instrument . . . ." Subdivision (2) of the statute, under which the defendant was not charged, forbids being "armed with a deadly weapon . . . ."

The trial judge instructed the jurors that they could find the defendant guilty of first degree robbery if they found, in addition to elements of simple robbery, that the defendant was "armed with a dangerous instrument." This instruction allowed the jury to convict the defendant of first degree robbery without proof that the defendant had used or threatened to use a dangerous instrument, as required by the statute.

The terms "armed" and "uses or threatens the use of" are not synonymous. Our Supreme Court interpreted "armed" to mean " 'furnished with weapons of offense or defense: fortified, equipped.' " *State* v. *Anderson*, 178 Conn. 287, 293–94, 422 A.2d 323 (1979), quoting Webster's Third New International Dictionary. The court noted that to be armed simply requires that a weapon be in one's possession. *State* v. *Anderson*, supra, 294. "[I]t is not necessary for a weapon to be exhibited, displayed, utilized or referred to in order for one to be considered 'armed.' " Id. The court found that it was possible to be armed without threatening the use of a weapon. Id.; see also *State* v. *Dolphin*, 203 Conn. 506, 518, 525 A.2d 509 (1987) (second degree robbery not lesser included offense of first degree robbery because possible to be "armed" without displaying or threatening to use weapon).

Elementary statutory construction as well as the cases comparing the terms "armed" and "used or threatened use" make it clear that the court was incorrect in telling the jury it could convict of first degree robbery on a finding that the defendant was "armed with a dangerous instrument."

In viewing the charge as a whole, it is possible that the jury was misled by the court's erroneous instruction. The court did state the charge accurately when it read the fourth count of the information aloud at the beginning of the instruction on the crime, yet the court then went on to instruct the jury that all that was required was that the defendant be "armed with a dangerous instrument." The court repeated the improper charge again when summarizing the elements of the crime. The court misstated this element at the conclusion of its instruction on first degree robbery. Because it was at the end of the robbery instructions and because the robbery instruction was itself the last of all the instruction on the four crimes charged, the jury may have remembered it especially well or placed particular emphasis on it. See *State v. Rose*, 19 Conn. App. 423, 427, 562 A.2d 583 (1989).

This instructional error was harmful because the jury was improperly instructed that mere possession of the dangerous instrument was sufficient for conviction of first degree robbery.

The judgment is reversed only as to the charges of burglary in the first degree and robbery in the first degree and the case is remanded for a new trial on those charges.

In this opinion LANDAU, J., concurred.

FOTI, J., dissenting. I concur with parts I and III of the majority opinion, but I respectfully disagree with part II, where the majority concludes that it is reasonably possible that the jury was misled. While I agree that the portion of the charge, in isolation, injected an incorrect element into the offense of burglary in the first degree, I must also conclude that when viewed as a whole, the charge could not reasonably have misled the jury.

" 'The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result.' . . ." (Citations omitted.) *State* v. *Ash*, 231 Conn. 484, 494, 651 A.2d 247 (1994). My review of the entire charge leads me to conclude that the improper instruction was harmless beyond a reasonable doubt. The question of "harmlessness of a jury instruction is properly gauged by reference to both the language of the entire charge and the evidence in the case . . . ." Id., 496. The evidence of the knife, as presented by the state, is more than adequately set forth in the majority opinion. Given the factual circumstances of this case, I do not believe that the jury could have found the defendant guilty without first making the proper factual finding that the defendant remained unlawfully in the victim's apartment with the knife, a dangerous instrument. See *State* v. *Woods*, 23 Conn. App. 615, 623, 583 A.2d 639 (1990). The single, isolated misstatement, in the context of an otherwise appropriate charge, did not reasonably mislead the jury. The trial court, on a number of occasions while instructing on the law of burglary in the first degree, correctly charged the jury that an element of that offense is that a person enters or remains unlawfully in a building, while armed with a dangerous instrument.[1] The single inconsistent phrase in this otherwise proper charge, to which the defendant failed to note an exception, did not deprive him of a fair trial, and did not reasonably mislead the jury. For this reason I would affirm the judgment of conviction as to the charge of burglary in the first degree.

Accordingly, I respectfully dissent.

---

[1] The trial court also read the substitute long form information to the jury, which correctly set forth the elements on the charge of burglary in the first degree. The jury had that information during deliberations.