[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15671
The petitioner, Ronald Owens, filed a petition for writ of habeas corpus pursuant to General Statutes § 52-466, seeking an order of the court vacating his conviction and sentence, ordering his immediate release from custody and other relief. After a jury trial, the petitioner was convicted, of first degree sexual assault in violation of General Statutes § 53a-70 (a)(1); burglary in the first degree in violation of General Statutes §53a-101 (a)(1); unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a); and robbery in the first degree in violation of General Statutes § 53a-134 (a)(3). On May 7, 1993, he was sentenced by the court, Koletsky, J., to serve a term of incarceration of thirty-six years, execution suspended after the service of twenty-six years. The petitioner filed an appeal of his conviction which overturned the conviction on the robbery and burglary charges. State v. Owens,39 Conn. App. 45, 663 A.2d 1108
(1995), cert. denied, 235 Conn. 927,667 A.2d 554 (1995). The petitioner is presently serving the sentence imposed in the custody of the commissioner of correction.
The petitioner claims that his detention is illegal because he was deprived of his right to effective assistance of trial counsel at his trial as guaranteed by the Sixth Amendment to the United States constitution and article first, sections 8 and 9 of the Connecticut constitution. The allegations of ineffectiveness can be generally separated into two categories. First, he alleges that trial counsel failed to investigate facts and witnesses and to present alternative defense strategies and theories. Second, he alleges that trial counsel failed to impeach the state's witnesses with respect to their motive and bias.[1] The respondent denies that the petitioner's confinement is illegal.
The Appellate Court set forth the following facts that the jury could have reasonably found: "On June 9, 1992, at approximately 2:30 a.m., the victim was awakened by the buzzer to her Hartford apartment. The victim looked out a window and saw the defendant, who was her godfather and a friend of her family. The defendant said that he wanted to talk to her and give her some money for her mother. The victim pushed the buzzer in her apartment to unlock the front door to the apartment building. CT Page 15672
The defendant entered the building and came up the stairs. When the victim unlocked the door to her apartment, he pushed his way in and asked the victim whether she was alone. The victim replied that she was not alone. The defendant than [sic] asked if he could have some water. The victim told the defendant to get the water himself and she went to her bedroom to put on sweat pants.
The defendant came up behind the victim in her bedroom saying that he knew that she was alone and that he intended to rape her. He choked her with one hand and held a knife in the other. The victim recognized the knife as one of her steak knives. Despite the victim's protests, the defendant forced the victim onto the bed, removed her clothing and sexually assaulted her.
After the sexual assault, the defendant asked the victim for money. The victim went to the hall closet, with the defendant still choking her, and gave him "a dollar and something' from her coat pocket. The defendant then asked the victim if she had any more money. The victim replied that she might have some money in her wallet. The defendant then brought the victim back into her bedroom where she took $10 from her pocketbook and handed it to the defendant. At that time, the defendant was still holding the knife in his hand. The entire incident lasted approximately fifteen to twenty minutes. State v. Owens, supra, 46-47.
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, section 8, of the Connecticut constitution. Copas v. Commissioner of Correction,234 Conn. 139, 153, 662 A.2d 718 (1995). The petitioner's right to effective assistance of habeas counsel is predicated on General Statutes § 51-296, which provides for the appointment of counsel for an indigent person in any habeas corpus proceeding arising from a criminal matter. Lozada v. Warden, 223 Conn. 834,838, 613 A.2d 818 (1992).
The constitutional right to competent representation does not require representation with no error. To establish that his trial counsel was ineffective, the petitioner must prove both that his counsel's performance was deficient and that the petitioner was actually prejudiced by such deficient performance. Strickland v.Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984); James L. v. Commissioner of Correction, 245 Conn. 132,145, 712 A.2d 947 (1998); Copas v. Commissioner of Correction, CT Page 15673 supra, 234 Conn. 154; Lozada v. Warden, supra, 223 Conn. 842-43;Bunkley v. Commissioner of Correction, 222 Conn. 444, 445,610 A.2d 598 (1992). In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation "fell below an objective standard of reasonableness." (Internal quotation marks omitted.) Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.)Johnson v. Commissioner of Correction, 36 Conn. App. 695, 703,652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. Thus, "[aln error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v. Commissioner ofCorrection, supra, 234 Conn. 147.[2]
The petitioner's first claim is that trial counsel failed to cross-examine properly and impeach the State's witnesses. As to the testimony of the victim's mother, Adele Johnson, the petitioner suggests that trial counsel was ineffective in failing to impeach her testimony with regard to where the victim's young son was living at the time of the incident. Petitioner claims that Johnson gave a statement that her grandchild went to stay with his father in December 1990 or January 1991, and later at the habeas trial she testified that he had left around June 9, 1992.[3] This is factually incorrect. At the trial and the habeas hearing, Johnson testified that the victim's son was visiting in Washington, D.C. at the time of the incident. CT Page 15674 (Exhibit 1, p. 6-34, Habeas Transcript p. 10.)
The only testimony which could be construed to be contradictory on this topic was the testimony of Johnson on direct that on June 8, 1992, the victim stopped by her house to pick up her son before going home. (Exhibit 1, 6-18.) On cross-examination trial counsel elicited testimony that the victim's son was in Washington, D.C. at the time. (Exhibit 1, p. 6-34.) Thus, these contradictory statements were before the jury to evaluate for what they were worth. Trial counsel could have used this contradictory testimony more effectively in an effort to point out the inconsistency. However, this is at best a minor oversight that the petitioner has failed to show prejudiced him in any manner. Johnson was the caretaker of the child during the day when his mother was at work. She was testifying approximately a year after the crime and was uncertain as to precisely when the father had taken him to Washington. It may have merely been a mistaken recollection of when her grandson left or a misstatement that she corrected on cross-examination. In any event, it was not a significant point. The petitioner has not sustained his burden of proof on either prong of the Strickland test with respect to this issue. Strickland v. Washington, supra, 466 U.S. 687.
The petitioner further argues that trial counsel should have probed the relationship between the petitioner and Johnson more thoroughly. Specifically, the petitioner claims that Johnson failed to describe her relationship with the petitioner as a romantic one at trial. At the trial, Johnson testified that the petitioner had moved in and was living with her at the time of the incident.[4] In fact, she testified on cross examination that he was living with her for approximately a month prior to the incident. (Exhibit 1, 6-32.) In questioning Johnson, trial counsel brought this fact up on several occasions and delved into the petitioner's daily involvement in Johnson's activities. Additionally, trial counsel asked Johnson how the victim felt about Johnson's "relationship" with the petitioner. (Exhibit 1, p. 6-37.) It is clear that the jury was aware that the relationship of the petitioner to Johnson went beyond that of a mere boarder. As to the claimed inconsistencies in Johnson's testimony, they are either insignificant or non-existent.
The petitioner also claims that trial counsel failed to investigate and failed to advise him of the fact that the petitioner's nephew, Howard Simpson, would be called as a witness for the state. Simpson testified at trial that he arrived on the CT Page 15675 scene after the incident had occurred and he testified as to the victim's emotional state. The petitioner claims that this failure by counsel to advise him of the fact that Simpson would be testifying or the fact that he arrived on the scene and noticed the victim's emotional state demonstrates counsel's lack of investigation. (Petitioner's Trial Brief, p. 5.) However, this is a non-sequitur. It does not follow that the failure to advise means that counsel failed to investigate. The petitioner testified that an investigator was utilized by trial counsel on this matter, and had spoken with the petitioner on at least one occasion and with the petitioner's mother on another. Little other evidence with respect to the scope or nature of the investigation was offered in evidence at the habeas hearing. The burden is on the petitioner to establish the inadequacy of the investigation as well as the prejudice suffered. The petitioner has done neither.
The petitioner additionally claims that trial counsel failed to adequately cross-examine the victim. Specifically the petitioner claims that the credibility of the victim could have been undermined when she testified that she was in fear of the petitioner. The petitioner suggests that the fact that the victim was scantily clad when she answered the apartment door and allowed him into the apartment could have been used to contradict the victim's claims of fear. (Petitioner's Trial Brief, p. 5.) This claim falls because the premise is incorrect factually. The victim did not testify that she allowed the petitioner into her apartment nor did she testify that she was initially in fear of the petitioner when he first arrived at her apartment. She testified that she unlocked the door and that the petitioner pushed his way into the apartment. The victim further testified that she was "uncomfortable" with him being there. (Exhibit 1, p. 5-49.) Her uncomfortable feeling grew into fear when the petitioner told her that he was going to rape her, grabbed her by the neck and held a knife to her throat. (Exhibit 1, p. 5-57.) Thus, there is no basis for attacking her credibility in the manner suggested by the petitioner.
The petitioner also claims that trial counsel failed to inquire of the victim as to any brief previous intimate relationship that they had. Petitioner claims that if this had been brought out, it would have "dovetailed with the cross-examination of Ms. Johnson as to any bias or anger she may have had towards the Petitioner since she and the petitioner were also having a relationship at that time." (Petitioner's Trial CT Page 15676 Brief, p. 6.) The court does not accept the factual premise that the victim "had a brief intimate relationship" with the petitioner. At trial the victim testified that during the attack she begged him to stop, stating "`Please, don't do this. Please, don't do this'". And I kept telling him, "I'm your goddaughter. You don't want to do this.'" (Exhibit 1, p. 5-55.) No evidence at trial suggested that a prior relationship existed. At the habeas hearing the only testimony that such a relationship existed was the testimony of the petitioner. (Habeas Transcript, p. 60.) The petitioner's testimony was lacking any detail of the purported relationship, was self-serving and lacked credibility. The additional premise, that Johnson knew of this purported relationship at the time of her testimony, is also unsupported by the facts. Johnson testified during the habeas hearing that she was unaware of any sexual relationship between the petitioner and the victim prior to the incident on June 9, 1992. (Habeas Transcript, p. 26.) The petitioner also testified that Johnson was, to the best of his knowledge, unaware of any purported sexual relationship that he had with the victim. (Habeas Transcript, p. 64.) No testimony was elicited from any witness that Johnson had any knowledge about an alleged consensual sexual relationship between the victim and petitioner after June 9, 1992 and prior to her testimony at trial. It is difficult to understand how the petitioner believes that Johnson's testimony may have been corrupted at trial by jealousy or anger if she was unaware of the alleged relationship.
The petitioner claims further that Johnson lied about the entire incident, especially about being owed money or why, if she was owed money, he would bring it to the victim when he had access to Johnson's apartment. The petitioner claims that he wanted trial counsel to ask these questions of Johnson but that he did not. Johnson's testimony with regard to being owed money was consistent with the victim's testimony that the petitioner gained access to her apartment by telling her that he had money for her mother. (Exhibit 1, p. 5-45.) This was the petitioner's excuse for gaining access to the apartment at 2:30 a.m. on June 9, 1992. While the fact that he could have delivered it to Johnson directly may have been an appropriate subject of cross examination, counsel's failure to pose the question, in light of all the other testimony, did not prejudice the petitioner sufficiently to satisfy the Strickland test. Strickland v.Washington, supra, 466 U.S. 687. A habeas court need not decide the deficiency of trial counsel's performance if consideration of the prejudice prong will be dispositive of the claim of CT Page 15677 ineffectiveness. Aillon v. Meachum, supra, 211 Conn. 362.
Finally, the petitioner claims that trial counsel failed to discredit the police officers based upon a discrepancy in the police reports. The petitioner claims that one report claimed that after the attack on the victim, the victim claimed that the petitioner smoked cocaine while a second police report claimed that he snorted cocaine. At trial, the victim testified that the petitioner smoked a pipe and described the pipe in some detail. (Exhibit 1, p. 5-63.) The arrest warrant affidavit stated that he smoked cocaine. (Exhibit 5.) The victim in her voluntary statement to the police dated June 12, 1992, stated that he smoked cocaine. (Exhibit 3.) Thus, the victim never wavered in her statements to the police and at trial as to the fact that he smoked. The only statement, that he snorted cocaine, was given by Johnson to the police' on June 9, 1992, when she relayed what her daughter told her in the early morning hours of the day of the attack. This may have been an error by the police or a mistaken recollection by Johnson at a time when there was obvious turmoil. However, the discrepancy in the reports and counsel's failure to utilize it was a minor oversight of insignificant import and easily explained in light of the constancy of the victim's statements and testimony.
Having considered the petitioner's claims individually and on a collective basis, the court finds that the petitioner has failed to sustain his burden of proving that trial counsel rendered ineffective assistance of counsel, and therefore the petition is dismissed.
Zarella, J.