OPINION OF THE COURT
Sheldon S. Levy, J.
How much physical force must be used, or immediately threatened, to support prima facie a charge of robbery? Is a threat of police arrest sufficient? Answers to these questions have not previously been reported in this State and are, accordingly, of first impression.
The defendants were accused in a five-count indictment, inter alia, of robbery in the first degree (defendant Flynn — a probationary Transit Authority patrolman — was carrying a loaded revolver when arrested) and robbery in the second degree (each aided by the other).
The facts involved are somewhat unique. On November 10, 1082, Thomas Roa was the manager of a store on St. Nicholas Avenue in Manhattan, which was a former beauty parlor. Some old wigs were still displayed in the window. In actuality, however, the location was now an illegal policy parlor — a numbers place — and had been for *1022 some time previously. At about 11:00 p.m. that evening, Roa was closing up shop for the night. A coworker, Maria, was tallying up the evening’s receipts. They both were in a locked area behind a glass partition.
Suddenly, three young men, later identified as the defendants herein, appeared in the public portion of the store. Defendant Silverman displayed a badge, which was hanging around his neck, said “police”, and demanded entry to the private part of the location. No weapon was displayed or employed, however, by any defendant during the entire incident.
When Roa hesitated to obey Silverman’s command, Maria pleaded to let the policemen in, and Roa opened the door to the inner sanctum. Silverman then placed his hand on Roa’s chest, cursed, and said, “Don’t move; get against the wall.” Roa complied and raised his hands. Maria was told to leave, and did.
Thereafter, while defendants Flynn and Coppola were searching the garbage cans and the refrigerator (fruitlessly, as it eventuated), Silverman confiscated a group of policy slips and over $400 in cash. All of the defendants then, nonchalantly, walked out of the establishment. At this point, Roa surmised that the three were not policemen, since they had not arrested him in the supposed “raid.” He then quickly pursued them with a metal awning pole and was soon joined by a real policeman, who was passing by at the time.
About 10 minutes later, after the defendants had disappeared following a four block chase, a shower of observable policy slips alerted what had now become a veritable army of policemen to make a rooftop apprehension of all three defendants. Additional policy slips and $463 in cash were found stashed in a skylight on the roof.
At the conclusion of the People’s evidentiary presentation, defendants moved for a trial order of dismissal as against all robbery related counts of the indictment. Defendants argue simply that the People had failed to prove prima facie the element of force or threatened force in the alleged robbery. The People countered with a compendium of attendant circumstances claimedly demonstrating that actual physical force had been sufficiently shown, namely, *1023 that three persons were involved; that they had identified themselves as police officers; that a hand of a defendant had been placed on the complainant’s chest; that he was given verbal directions to move; and that at least one defendant had cursed during the course of events. Alternatively, the People asserted that these actions, when taken together, constituted, at a minimum, an implied threat of physical force.
The court’s resolution of the instant application occasioned the present novel determination.
Section 160.00 of the Penal Law defines the crime of robbery as “forcible stealing” and further instructs that “A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person”. Although no definition of “physical force” is then set forth in the statutes, a commonsense meaning can be readily ascribed, such as power or strength or violence exerted against a body.
In law, however, although the use of actual violence is not the sine qua non of physical force, bodily contact alone is not its functional equivalent either, especially when it is effected by a mere touching (People v Cherry, 49 AD2d 860).
Thus, such activities as rolling a drunk, picking a pocket or snatching a purse from an unsuspecting and unresisting victim (People v Davis, 71 AD2d 607) may properly bring forth a felony count of larceny from the person (Penal Law, § 155.30, subd 5); but, because of the lack of physical force involved, these actions will not support any robbery charge.
On the other hand, the momentum of a moving train employed in connection with an attempted pocketbook grab that meets resistance has been held to be more than a sufficient demonstration of physical force for robbery purposes (People v Santiago, 62 AD2d 572, affd 48 NY2d 1023). Of course, even where physical force is present, it must be used intentionally, not accidentally (People v Chessman, 75 AD2d 187, app dsmd 54 NY2d 1016).
Moreover, it is not controlling in terms of a prima facie showing of force that there are two or three persons, or *1024 even a crowd, involved. It is the actual behavior of any such persons, not their number or mere presence, that is determinative. Force of numbers alone is not a showing of physical force.
Furthermore, the use of a curse word or two has never been equated, impliedly or otherwise, with a threat of physical force or the creation of a fear thereof. While no standardized, romanticized or particularized phrases need be used to elevate a larceny to a robbery, the legislative intent is plain that a threat to employ physical force forthwith is not accomplished by the mere recitation of verbal vulgarities. Included therein must minimally be grounds for a reasonable expectation of bodily harm to the victim or to some other person.
Accordingly, although grabbing a victim firmly by the neck, causing him pain, and then pushing his head down against a wall has been held to constitute physical force (People v McGowan, 98 AD2d 602), the element of forcible theft, necessary for any robbery count, is not satisfied at all solely by a hand on the chest, a curse and an order to move, even where three people are present, unless the victim is also put in fear of an immediate use of physical force. However, fear of physical injury is not a necessary ingredient of robbery, but evidence of such a fear would still be admissible to demonstrate a victim’s apprehension of an immediate threat of the employment of physical force (see People v Woods, 41 NY2d 279, 281; People v Davis, 71 AD2d 607, 608, supra).
Instead, it is clear that here the modus operandi of the thieves was not the use or threatened use of physical force at all, but a ruse that they were police officers. Until they departed the premises without making an arrest, they plainly acted not as robbers, but as law enforcement officials. Their masquerade had not been exposed or even questioned. The submission of the complainant Roa was not to physical force or to any immediate threat thereof, but merely to what was perceived by him to be police authority — the power of the badge. Indeed, the locked inner door was opened by Roa only when Maria urged him to obey a police order. Thereafter, the complainant’s anxiety was not of bodily danger or of physical harm, but of a *1025 police search of his illegal premises and of a subsequent arrest for his unlawful activities.
It would be an unwarranted inference and a disservice to all law enforcement personnel to assume that every police encounter or arrest constitutes also a threat of the use of physical force. “[A] man in the hands of the law is not legally presumed to be in danger of bodily harm” (Montsdoca v State, 84 Fla 82, 87), and a threat of arrest and prosecution, whether express or implied, is insufficient to create a fear of physical force. Even a false threat, if believed by the victim, is inadequate (supra).
Thus, in the instant case, the People have failed to establish, as a matter of law, that the stealing was forcible. Unlike the situation in People v Woods (41 NY2d 279, 282-283, supra), where the defendant’s ultimate actions could readily be construed as, at least, threats of an immediate use of physical force, there was here no proof from which a jury could draw a similar conclusion. In the instant case, there was no threat, verbal or otherwise, of the immediate employment of such force in order to compel Roa to part with the subject money and policy slips. Whether the People’s factual assertions are considered separately or together, the deficiency is still apparent, and the resultant evidentiary conglomeration does not rise to the level of even an implied threat of physical force.
Accordingly, under the robbery counts involved, only the lesser included crime of petit larceny is viable. Although the present fact pattern would plainly buttress additional felony counts of common-law larceny by trick or by false pretenses (see Penal Law, § 155.05, subd 2, par [a]), they were not originally charged; are not lesser offenses of robbery; and cannot now be added to or substituted for pending counts in the accusatory instrument.
However, because there is a lesser included crime available, namely, petit larceny, the robbery charges cannot be outrightly dismissed at this posture of the trial (see CPL 290.10, subd 1). Of course, as a matter of law and practicality, when, at the conclusion of the case, the crime of petit larceny alone is submitted to the jury (along with another previously charged count of burglary in the third degree), all of the robbery counts are then effectively dismissed, *1026 since defendants at that point have secured the equivalent of an acquittal on those charges (People v Mayo, 48 NY2d 245, 249).
In this type of situation, following the presentation of the People’s case and the court’s ruling on defendants’ motion for a trial order of dismissal, if a defense case is to be presented, the jury should normally be informed forthwith of the fact that certain initially charged crimes are no longer in the case; that some specified lesser included crime or crimes will ultimately be charged; and that there should be no speculation as to the reasons for these modifications. In practice, such immediate disclosure will forestall subsequent surprise and will permit the jury to focus directly and specifically on the ultimate offenses to be considered by them and on the factual issues and evidence pertaining thereto.
For all of the reasons stated, defendants’ application for a trial order of dismissal is denied, but, for all legal and practical purposes, defendants must now be deemed to have been acquitted of all of the robbery counts.