Salem
JAMES MANUEL BIVINS, s/k/a
JAMES MANUEL BIVENS
v.
COMMONWEALTH OF VIRGINIA
No. 1924-93-3
Decided February 28, 1995

COUNSEL

John Gregory, Jr. (A. Kristin Shandor, on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—James Manuel Bivins (Bivins) appeals his conviction for robbery of a convenience store clerk. Bivins asserts that the evidence was insufficient to show that he accomplished the taking by intimidation, rendering his crime larceny rather than robbery. Clarifying our holding in *Harris v. Commonwealth*, 3 Va. App. 519, 351 S.E.2d 356 (1986), we agree and reverse Bivins' conviction.

In the early morning hours of August 22, 1992, Bivins entered the Orange Market in Roanoke County. After transacting some business with Donna LaPrade (LaPrade), the clerk, Bivins reached across the counter and took the cash drawer out of the register. As Bivins reached across the counter, LaPrade jumped back. She testified that she had been one foot away from Bivins and was "scared."[1] On cross-examination, LaPrade testified that

---

[1] The relevant portion of the testimony is:

*LaPrade, Direct Examination*

Q: What did you do when [Bivins] reached across the counter?
A: I jumped backwards.
Q: Why did you jump backwards.
A: Because I didn't know if he was going for me or if he was going for the cash drawer.

she had previously described this incident to an investigating police officer as follows: "[Bivins] did it, he did it kind of easy—he just, you know, politely reached over the counter [and took the cash drawer]."

■ Robbery, a common law offense in Virginia, is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Johnson v. Commonwealth*, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968). The act of violence or intimidation must precede or be concomitant with the taking. *Mason v. Commonwealth*, 200 Va. 253, 256, 105 S.E.2d 149, 151 (1958). The alternative elements of violence or intimidation have been further defined as the use of "force, threat or intimidation." *Clay v. Commonwealth*, 13 Va. App. 617, 619, 414 S.E.2d 432, 433 (1992).

■ Violence or force requires a physical touching or violation of the victim's person. The touching or violation necessary to prove the offense may be indirect, but cannot result merely from the force associated with the taking. *Johnson v. Commonwealth*, 65 Va. (24 Gratt.) 555, 557 (1873) (taking of money from hand of victim with no greater force than was required to take bills is larceny from the person). Threat requires an overt expression, by words or conduct, of a present intention to commit an immediate act of violence or force against the victim. *See Parnell v. Commonwealth*, 15 Va. App. 342, 345-47, 423 S.E.2d 834, 836-37 (1992). The Commonwealth concedes that Bivins' actions did not constitute a use of violence, force or a threat. Accordingly, Bivins can only be guilty of robbery if the evidence shows that he accomplished the taking by intimidation.

■ Intimidation is defined as "[u]nlawful coercion; extortion; duress; putting in fear."[2] *Black's Law Dictionary* 831 (6th ed. 1990). "To take or attempt to take, 'by intimidation' means willfully to take, or attempt to take, by putting in fear of bodily

---

Q: How did you feel at that time.
A: Scared.

[2] To avoid confusion, we note that "extortion," as used here, does not refer to the crime of theft by extortion. The crime of theft by extortion is a separate crime from robbery, the distinction being the immediacy of the harm expressed or implied by the threat or intimidation. *See, e.g., State v. Planes*, 643 A.2d 658, 660 (N.J. Super. Ct. Law Div. 1994) (threat of future harm is characteristic of theft by extortion, as opposed to robbery).

harm." *Id.* at 822. Intimidation results when the words or conduct of the accused exercise such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, placing the victim in fear of bodily harm. *Cf. Sutton v. Commonwealth*, 228 Va. 654, 663, 324 S.E.2d 665, 669-70 (1985) (similar element for sexual crimes). Intimidation differs from threat in that it occurs without an express threat by the accused to do bodily harm. *Id.*; *see also Commonwealth v. Brachbill*, 527 A.2d 113, 116 (Pa. Super. Ct. 1987) ("the legal and common definitions of intimidation invoke a notion of conduct which is directed toward affecting future behavior whether or not a threat is part of that conduct").

The Commonwealth relies upon *Harris* for the proposition that "[t]here is no requirement in Virginia that the 'fear' induced by the defendant's intimidating words or conduct be judged by an objective standard of reasonableness." 3 Va. App. at 522, 351 S.E.2d at 357. In *Harris*, the victim was harassed by three men, forced to submit to a search, and surrendered personal belongings at Harris' request. After the taking was completed, Harris threatened to shoot the victim. Harris asserted that none of the acts prior to or concomitant with the taking of the victim's property constituted threats of violence which intimidated the victim. *Id.* at 520-521, 351 S.E.2d at 356.

We held that the atmosphere of intimidation created by Harris and his companions, even if not accompanied by "[t]hreats of violence or bodily harm," was sufficient to prove that the taking was accomplished by intimidation. *Id.* at 521, 351 S.E.2d at 357. However, in *Harris* we went on to say that intimidation "must result from the words or conduct of the accused rather than the temperamental timidity of the victim." *Id.*; *see also People v. Flynn*, 475 N.Y.S.2d 334, 337 (N.Y. Sup. Ct. 1984) ("[i]t is the actual behavior of any such persons, not their number or mere presence, that is determinative" of whether a robbery by force or intimidation is intended). Thus, where the victim's fear results from the taking itself, the taking is not accomplished through intimidation. The crime committed is larceny, not robbery. *See People v. Thomas*, 456 N.E.2d 684, 685 (Ill. App. Ct. 1983) ("the offense of robbery . . . is not related to the force used on

the object taken but to the force or intimidation directed at the person of the victim").

Whether the subjective fear induced by the accused's actions facilitated the taking or merely resulted from the taking will depend on the facts of the individual case. The intent of the accused, if it is merely to take, while not determinative, is a factor in this calculus. *United States v. Slater*, 692 F.2d 107, 109 (10th Cir. 1982). Thus, in *Harris* we concluded that "the trier of fact was entitled to infer that [the victim] actually surrendered his property to Harris because of fear of bodily harm induced by Harris' intimidating words and conduct." 3 Va. App. at 521-22, 351 S.E.2d at 357.

Here, LaPrade's fear, while believable, was based solely upon Bivins' sudden movement to seize the cash drawer. This action-reaction combination is comparable to an unresisted purse-snatching, rather than a robbery by intimidation. *Cf. Flynn*, 475 N.Y.S.2d at 337 (unresisted purse-snatching, even if resulting in "accidental" application of force, is larceny); *Thomas*, 456 N.E.2d at 685-86 (declining to adopt rule urged by state that incidental injury resulting from force used to snatch purse elevates crime from larceny to robbery). LaPrade's assertion that she "didn't know if he was going for me or if he was going for the cash drawer" does not, as the Commonwealth asserts, show that Bivins' actions prohibited LaPrade from interfering with his taking the cash drawer.

Even viewing the evidence in the light most favorable to the Commonwealth, *Josephs v. Commonwealth*, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc), we hold that the record is insufficient to prove that Bivins accomplished a robbery by intimidation. Rather, his actions merely produced an understandable, subjective reaction of fear in the victim of a sudden and unexpected larceny. Her fear, while engendered by Bivins' conduct, was incidental to the crime itself. It arose from the victim's temperament rather than by design or conduct of the accused.

For these reasons we reverse Bivins' conviction for the "Orange Market" robbery and remand for further proceedings if the Commonwealth be so advised.[3]

*Reversed and remanded.*

Barrow, J., and Coleman, J., concurred.

---

[3] In seeking relief from this Court, Bivins requested that the case "be remanded to the trial court for the prosecution of the charge of petit larceny." Because the trial court did not reach a determination on what level of larceny, if any, Bivins would be subject to as a lesser-included offense of the indicted charge of robbery, we express no opinion concerning and place no limitation on the level of that offense for which the Commonwealth may seek to obtain a conviction if they be so advised. *See generally Garland v. Commonwealth*, 18 Va. App. 706, 446 S.E.2d 628 (1994) (majority and dissenting opinions discussing determination of larceny from the person under similar facts).