COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Annunziata and Bumgardner
Argued at Norfolk, Virginia


DEVITA LATORIA JONES
                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1433-98-1            JUDGE SAM W. COLEMAN III
                                            MAY 18, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      A. Bonwill Shockley, Judge

              Andrew G. Wiggin (Donald E. Lee, Jr. &
              Associates, on briefs), for appellant.

              Kathleen B. Martin, Assistant Attorney
              General (Mark L. Earley, Attorney General,
              on brief), for appellee.


     Devita Latoria Jones was convicted in a bench trial of

conspiracy to commit robbery, two counts of attempted robbery, and

use of a firearm in the commission of attempted robbery.  Jones

contends that the trial court erred by denying her motion to

suppress a statement obtained from her in violation of her Fifth

Amendment privilege against self-incrimination.  Additionally, she

contends that the trial court erred by allowing a victim witness

to testify about his understanding of ambiguous language spoken

during the robbery.  Finding no error, we affirm.

_____

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

BACKGROUND

On appeal from a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party and grant to it all reasonable inferences fairly deducible therefrom.  See Harris v. Commonwealth, 27 Va. App. 554, 561, 500 S.E.2d 257, 260 (1998).

Jones and three other individuals lured two motorists into an "inspection station" under the pretext of seeking automotive assistance.  Once there, two of the individuals drew weapons in an attempt to rob the motorists.  The victims fled amidst gunfire.

On April 11, 1997, Detective Cox learned that Jones, who was already in custody, wanted to speak with him.  Believing that Jones had invoked her Fifth Amendment right to counsel during a March 26, 1997 custodial interrogation, Cox reminded Jones that the Miranda rights read to her on March 26, 1997 were still in effect, and asked her if she wanted to proceed with a discussion.  When Jones responded by requesting information about the charges against her, Cox replied that she was being held on robbery charges.  He again reminded her that she had invoked her right to an attorney and suggested that she seek the advice of her attorney.  Cox then explained that he agreed to meet with her because he thought she had something to tell him and that if she did not, he would leave.

As he turned to leave, she asked whether he wanted to show her some pictures.  Cox replied that he did not, but he told Jones

-

that if she wanted to look at some pictures he could oblige her. Jones began crying and said she did not know whether to contact an attorney.[1]  Cox told her to call her attorney if she desired. Jones then stated she would look at some police photographs. Jones identified from a photographic array one of the perpetrators of the attempted robbery with which she was later charged.  Jones explained to Cox how the individual had instructed her to lure the motorists into the trap.

At trial, Inocencio Albrincoles, a victim of the attempted robbery, testified that one of the individuals who was brandishing a firearm at him stated, "What's up?  What's up now?"  The Commonwealth asked Albrincoles, "[w]hat did you perceive that to mean?"  Over Jones's objection, the trial court admitted the witness' response, which was that "whatever we had, they wanted."

ANALYSIS

In a pretrial suppression motion, Jones argued that Cox obtained the incriminating statement in violation of her Fifth Amendment right against self-incrimination.  Jones contended that Cox failed to honor scrupulously the <u>Miranda</u> rights she had properly invoked in March.  We review the trial court's findings of historical fact for "clear error," but we review <u>de</u> <u>novo</u> the trial court's application of defined legal standards to those

---

[1]The officer gave two different representations of her statement:  "I don't know if I need my attorney," and "I don't know if I should talk to my attorney."

-

facts.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).

On appeal, Jones argues that the Commonwealth failed to establish that the police officers informed Jones of her Miranda rights in her initial March 26, 1997 interview.  In the suppression hearing, Officer Cox testified that at the April 11, 1997 meeting where he obtained the statement that Jones sought to suppress, he explained to Jones that the Miranda rights that had been explained to her in March were still in effect.[2]  Jones contends that the evidence only proves that Cox told her in April that officers had read Miranda rights to her in March, but the Commonwealth did not prove that the officers had in fact explained the Miranda rights to her.

However, at the suppression hearing, Jones never asserted that the evidence should be suppressed because the officers failed to read Miranda rights to her.  In fact, during the suppression arguments, counsel for Jones conceded that the

---

[2]Detective Cox made the following statements:
"I advised her that she was read her Miranda rights on the March date and that she was still under those Miranda rights."
"I advised her that her Miranda warning that was read to her on the March incident -- that that Miranda warning was still in effect."
"I advised her -- I said the Miranda warning that you were read the night the other detectives talked to you is still in effect."
"I advised her that she had invoked her right to an attorney."

-

officers had read Jones her Miranda rights in March.  Counsel argued that the police officers "didn't re-advise her of her Miranda rights, so these weren't fresh in her mind."  (Emphasis added).  Furthermore, he stated, "we don't know what condition she was in on March 26th when the Miranda rights were read to her, but he did not re-advise her."  (Emphasis added).

Having conceded in the suppression hearing that "on March 26, Miranda rights . . . were read to her," Jones may not now argue on appeal that on March 26, Miranda rights were not read to her.  Jones preserved for appeal only those issues that she raised at the suppression hearing.  See Rule 5A:18; Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991).

> "The main purpose of [Rule 5A:18] is to
> afford the trial court an opportunity to
> rule intelligently on the issues presented,
> thus avoiding unnecessary appeals and
> reversal.  In addition, a specific,
> contemporaneous objection gives the opposing
> party the opportunity to meet the objection
> at that stage of the proceeding."

Ohree v. Commonwealth, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998) (quoting Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991)).  We find that Jones is procedurally barred from raising on appeal, for the first time, the issue of whether officers properly explained the Miranda rights to her on March 26.

Jones did, however, preserve for appeal the issue of whether Officer Cox honored Jones's previously invoked Fifth

-

Amendment rights. A defendant who has "expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); see Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983) (finding valid waiver after accused reopened dialogue by inquiring, "Well what is going to happen to me now?"); Harrison v. Commonwealth, 244 Va. 576, 582-83, 423 S.E.2d 160, 164 (1992) (holding that appellant initiated contact by asking police "what was going to happen to him"). Jones concedes that she initiated the contact with Cox, and we find that her conduct during the April meeting invited discussion of the incident out of which the charges arose. See Giles v. Commonwealth, 28 Va. App. 527, 535, 507 S.E.2d 102, 107 (1998).

The United States Supreme Court has made clear, however, that once an accused has invoked her right to counsel, she does not waive that right merely by initiating some contact with the police in the absence of her counsel. The Commonwealth must prove that, under the totality of the circumstances, the accused made a knowing and intelligent decision to waive her right to have counsel present. See Bradshaw, 462 U.S. at 1046; Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475 (1997).

Whether the defendant knowingly and intelligently waived her right to counsel depends "upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). After the police officers read Jones the Miranda rights in March, she invoked her right to counsel. Two weeks later, Jones, of her own volition, requested to speak to Officer Cox in the absence of counsel. Cox reminded Jones that the Miranda rights that the officers had read to her earlier were still in effect, and he inquired whether she still wanted to talk to him. When she proceeded to inquire about the charges against her, he again reminded her that she had invoked her right to an attorney and that she should speak with the attorney. He further advised her that she could contact an attorney before proceeding. Nevertheless, Jones, who had a prior felony charge and experience with the criminal justice system, decided to proceed without counsel. Although she cried during the interrogation, Officer Cox testified that she appeared "fine" and asked "intelligent questions." We find from this evidence that Jones knowingly, intelligently, and voluntarily waived her previously invoked right to counsel and that she did not again invoke the right to counsel during the meeting with Cox. Accordingly, the trial court did not err in denying Jones's motion to suppress her statements.

Jones next contends that the trial court erred in allowing Albrincoles, one of the victims, to testify as to his

-

understanding of the statement made by one of the robbers brandishing a firearm: "What's up? What's up now?" Albrincoles responded: "Basically what it meant was that whatever we had, they wanted -- to put it in layman's terms." Jones contends that the question called for inadmissible lay opinion.

"The admissibility of evidence is within the broad discretion of the trial court, and the ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The elements of common law robbery include the taking of a victim's property "against his will . . . by violence or by putting him in fear." Chappelle v. Commonwealth, 28 Va. App. 272, 274, 504 S.E.2d 378, 379 (1998). Thus, a robbery can occur where the robber takes the victim's property without actual violence, but by the use of intimidation. See e.g., Jordan v. Commonwealth, 2 Va. App. 590, 597, 347 S.E.2d 152, 156 (1986).

> To take or attempt to take by intimidation means willfully to take, or attempt to take, by putting in fear of bodily harm. Intimidation results when the words or conduct of the accused exercise such domination and control over the victim as to overcome the victim's mind, and overbear the victim's will, placing the victim in fear of bodily harm.

Bivins v. Commonwealth, 19 Va. App. 750, 752-53, 454 S.E.2d 741, 742 (1995) (internal quotation marks and citation omitted).

The challenged testimony tended to prove the victim's state of mind -- specifically whether or not he was intimidated by the

-

statement.  Whether the perpetrators intimidated the victim was relevant to whether they took direct steps to effectuate a robbery.  The testimony was, therefore, properly admissible as an "opinion" or "impression" drawn from an observed fact that explained how the witness responded or reacted to the observed fact.  See Lafon v. Commonwealth, 17 Va. App. 411, 420-21, 438 S.E.2d 279, 285 (1993).  The statement, "what's up, what's up now," taken in context with the robber brandishing a firearm at the victim, could have been intended to intimidate the victim. The trial court did not err by admitting the testimony for the purpose of proving that the statement, and meaning that the victim derived from it, intimidated the victim.

Finding that the trial court did not err in denying the motion to suppress, or in admitting the contested statement, we affirm the convictions.

Affirmed.