COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Russell and Malveaux
Argued at Lexington, Virginia


DIMITRIC LE'DRE PRITCHETT

                                              MEMORANDUM OPINION* BY
v.        Record No. 0419-18-3                JUDGE GLEN A. HUFF
                                              MARCH 19, 2019

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                            James J. Reynolds, Judge

            James C. Martin (Martin & Martin Law Firm, on brief), for
            appellant.

            Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
            Attorney General; Robert H. Anderson, III, Senior Assistant
            Attorney General, on brief), for appellee.


        Dimitric Le'dre Pritchett ("appellant") appeals his conviction of robbery, in violation of

Code § 18.2-58.  Following a bench trial in the Circuit Court of the City of Danville ("trial

court"), appellant was sentenced to fifteen years in prison, with twelve years suspended.  On

appeal, appellant contends that the trial court erred in ruling that there was sufficient evidence of

violence or intimidation to sustain his conviction.  Appellant argues that the evidence would

support a conviction of petit larceny, but not robbery.  Viewing the evidence in the light most

favorable to the prevailing party, this Court finds that a reasonable factfinder could conclude that

the purse snatching was accomplished with sufficient use of force to support the conviction of

robbery.  Accordingly, the conviction is affirmed.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672 (2004)).  So viewed, the evidence is as follows.

On the evening of January 4, 2017, Murphy went to Walmart with her sister and then drove to her sister's house on Martin Avenue at approximately 8:00 p.m.  It was dark at that time.  Murphy pulled into the driveway and parked behind her father's vehicle.  Murphy remained seated in the driver's seat of the vehicle while her sister unloaded her groceries and shut the trunk.  After her sister shut the trunk, Murphy saw a shadow in the street but did not think anything of it because "people walk up and down [the street] all the time."  Then Murphy looked at her side view mirror and saw two more shadows coming up, but she did not think much of it because she thought it was her son.

At the time, Murphy's purse was sitting on her left leg, her arm was "on the arm rest with my hand on my pocketbook, like wrapped around it."  Suddenly, Murphy's door opened and someone stole her purse.  Murphy's exact testimony about the incident is as follows:

> Q.  So, what happened when your car door got opened?
>
> A.  When my car door opened a hand come in and grabbed my arm and pocketbook.  And pulled my arm out of the car and I jerked down, but my pocketbook continued to go.

On cross-examination, Murphy testified as follows:

> Q.  Ma'am, from the time that you felt your purse being grabbed, until it was gone can you estimate how long that was?
>
> A.  It was . . . it was instant.  I mean, when he opened my . . . when whoever opened my door, they reached in and grabbed my arm and pocketbook and was gone.  It was no hesitation.

When questioned by the court, Murphy gave the following testimony:

> Q. Ms. Murphy, I just want to make sure I didn't miss anything while I was taking notes, can you just show me what happened to you when the door was opened? Just as if you are sitting in your car seat right there?
>
> A: I was sitting in my car and I had my purse on my leg, left leg. And my arm was resting on the arm rest of the door with my . . . holding my pocketbook like this. And then my car door opens, a hand comes and grabs my pocketbook and my arm and they both go flying out the door. And I dropped my arm.
>
> The Court: Okay. Thank you.

Murphy left the vehicle and heard the perpetrators' footsteps as they ran away, and heard one say that she might be calling the police. Then the group ran to a vehicle parked two or three doors down from where Murphy's car was parked, and drove away. Murphy called the police, and when the police arrived she was scared and anxiously hyperventilating. She was unable to identity the perpetrators for the police but said that she only saw shadows and a hand, and she pointed in the direction where they went. Murphy testified that she was not injured during the taking and that she got everything back, except for $40 cash.

The perpetrators were arrested, and appellant was indicted for robbery on the basis of accomplice liability. Appellant pled not guilty and waived his right to a jury. In appellant's motion to strike, appellant acknowledged that he could be guilty of petit larceny, but that the item taken was of insufficient value to convict on a charge of grand larceny. The trial court agreed that the offense could not be grand larceny and stated that appellant could only be guilty of petit larceny or robbery. The court found appellant guilty of robbery on January 31, 2018. Appellant moved the court to reconsider its finding of guilt on the ground that there was insufficient evidence of violence or intimidation, but the motion was denied. The court then sentenced appellant to fifteen years' imprisonment, with twelve years suspended. In making his final determination, the trial judge stated,

- 3 -

the evidence is clear that, at the time that the door was opened, Ms. Murphy was in fear, she testified that her arm was physically grabbed and jerked along with her purse. She was divested of her . . . of the possession of her purse . . . . And the forced [sic] used to affect the taking of that property involved violence to her body. The Court believes that that evidence supports a conviction of robbery.

This appeal followed.

## II. STANDARD OF REVIEW

"We review the sufficiency of the evidence in the light most favorable to the Commonwealth, and only reverse the judgment of the circuit court when its decision is plainly wrong or without evidence to support it." Farhoumand v. Commonwealth, 288 Va. 338, 351 (2014). Under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. When the defendant is tried before the court without a jury, "that court [is] the fact finder, and its judgment is afforded the same weight as a jury verdict." Parham v. Commonwealth, 64 Va. App. 560, 565 (2015).

## III. ANALYSIS

Appellant asks this Court to once again examine the line between larceny and robbery. Specifically, he alleges there was insufficient evidence of violence or intimidation to prove the latter. In Virginia, robbery is a common law offense defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by

violence or intimidation." Johnson v. Commonwealth, 209 Va. 291, 293 (1968). This Court has held that "conduct which is generally described as 'purse snatching' is a larceny unless the evidence proves the accused employed violence against the victim's person or used intimidation." Jones v. Commonwealth, 26 Va. App. 736, 738-39 (1998).

The Commonwealth argues that the perpetrator in this case used both intimidation and violence to take the victim's purse. The Commonwealth asserts that the evidence supports a reasonable inference that the victim was intimidated by the presence of multiple unknown individuals around her car. At trial the Commonwealth argued, and the trial court agreed, that because the perpetrator had to move Murphy's arm in order to take the purse, and because the perpetrator did in fact touch Murphy's arm to do so, that touching constituted the force necessary to prove, as a matter of law, that the thief used violence to take the purse. Before this Court, the Commonwealth continues its argument regarding intimidation, and also argues that the evidence supports a reasonable inference that the victim resisted the taking of her purse, which led the perpetrator to overcome that resistance by force. In light of this Court's decision regarding force, we need not reach the issue of intimidation. See Commonwealth v. Swann, 290 Va. 194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.").

Although more than incidental touching of a victim is required in order to establish the force necessary to support a conviction for robbery, this Court finds that the evidence in the record, when viewed in the light most favorable to the Commonwealth, could lead a reasonable factfinder to infer that Murphy resisted the taking and that the perpetrator overcame that resistance by force. Accordingly, applying the applicable standard of review, this Court affirms appellant's conviction.

This appeal hinges entirely on the question of whether there is any evidence to prove the thief used violence to take Murphy's purse. In purse snatching cases, the line between larceny and robbery is a fine one and the decisions are heavily fact-dependent. Previous cases before this Court have noted the importance of resistance by the victim, and the thief's efforts to overcome that resistance. For example, in Mills v. Commonwealth, 52 Va. App. 214, 219 (2008) (quoting 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 8.11(d)(1) (1986)), this Court observed that

> The great weight of authority . . . supports the view that there is not sufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking. On the other hand, when the owner, aware of the impending snatching, resists it . . . [and] a struggle . . . is necessary before the thief can get possession . . . there is enough force to make the taking robbery.

Similarly, "for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person. Rather, there must be resistance by the victim that is overcome by the physical force of the offender." Id. (quoting 67 Am. Jur. 2d Robbery § 29 (2007)). When deciding if the amount of force was sufficient to sustain a robbery conviction, courts often look to other circumstances of the taking, such as "when a struggle ensues, [or] where the victim is knocked down . . . ." Winn v. Commonwealth, 21 Va. App. 179, 182 (1995) (quoting Peter G. Guthrie, Purse Snatching as Robbery or Theft, 42 A.L.R.3d 1381, 1383 (1972 & 1994 Supp.)).

Also important, the actions of a purse snatcher constitute robbery only if the perpetrator, directly or indirectly, touches or violates the victim's person. Bivins v. Commonwealth, 19 Va. App. 750, 752 (1995). While the touching may be indirect, it "cannot result merely from the force associated with the taking." Id. The force used must be "directed at the person of the

victim," rather than the object taken. <u>Winn</u>, 21 Va. App. at 181-82 (quoting <u>Bivins</u>, 19 Va. App. at 753-54). Two significant cases are instructive to this analysis.

In <u>Winn</u>, the victim had her purse under her arm, with the strap over her shoulder, when the perpetrator appeared behind her, seized her purse, and ran away. <u>Id.</u> The victim testified that she did not struggle to retain her purse, and the whole encounter lasted mere seconds. <u>Id.</u> at 181. Although the thief used "very strong" force to take the purse, this Court found that it was merely "the force necessary to remove the purse from the victim's shoulder, not the force associated with violence against or resistance from the victim" and thus the evidence was insufficient to sustain a robbery conviction. <u>Id.</u> at 184.

The facts in <u>Mills</u> provide adequate contrast. In <u>Mills</u>, the victim was walking through a parking lot when a car pulled up beside her. 52 Va. App. at 216. The thief, sitting in the passenger seat, asked her for directions, then grabbed her pocketbook and drove away. <u>Id.</u> The victim tried to hang on to her purse and pull it away from the thief, but she was pulled off her feet and dragged over thirty feet through the parking lot before losing her grip and falling. <u>Id.</u> This Court found that "unlike <u>Winn</u>, here there was 'resistance by the victim' to retain possession of her purse," and the thief overcame that resistance by force. <u>Id.</u> at 219. There was no evidence of intimidation, but this Court upheld the appellant's conviction for robbery based solely on a theory of taking by violence. <u>Id.</u>

Before this Court the Commonwealth asserts that Murphy resisted the perpetrator's efforts to take her purse. Although Murphy never specifically testified as such, and was never directly asked if she struggled with the thief, the Commonwealth argues that her resistance can be inferred from the following testimony: "When my car door opened, a hand come in and grabbed my arm and pocketbook. And pulled my arm out of the car and I jerked down, but my pocketbook continued to go." Murphy's testimony that she "jerked down" or "dropped her arm"

when the thief grabbed her arm and pocketbook supports the Commonwealth's argument that a reasonable fact finder could infer that Murphy resisted the thief's effort to take her purse. Appellant disputes that such an inference is reasonable, given that Murphy testified on cross-examination that "when whoever opened my door, they reached in and grabbed my arm and pocketbook and was gone. It was no hesitation."

When reviewing the sufficiency of the evidence, this Court must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth *and all fair inferences to be drawn therefrom.*" Bowman v. Commonwealth, 290 Va. 492, 494 (2015) (emphasis added) (quoting Kelley v. Commonwealth, 289 Va. 463, 467-68 (2015)). An inference would become unfair "when it becomes so attenuated as to appear to stand alone, deriving none of its probative strength from the proven basic facts." Thomas v. Commonwealth, 48 Va. App. 605, 608 (2006). Inferences cannot become so attenuated that they "push 'into the realm of *non sequitur.*'" Id.

On appeal, even if the lower court did not articulate specific fact finding on a particular issue, this Court considers "whether *a* rational factfinder *could have* inferred beyond a reasonable doubt" a particular fact based on proven facts. Bowman, 290 Va. at 500 (emphasis added). In this case we must consider whether a rational factfinder could have inferred beyond a reasonable doubt that Murphy resisted the thief's attempt to take her purse and that the thief had to use some amount of force to overcome her resistance, greater than would otherwise have been necessary to just remove her purse from her lap. This Court finds that a rational factfinder could make such an inference from Murphy's statement that she "jerked down" when the thief grabbed her arm, and her further statement to the court that when the thief pulled her arm and purse out of the car she "dropped [her] arm." Murphy's statements on both direct examination and on cross-examination could be interpreted in various ways or given varying amounts of weight

based on her demeanor, mannerisms, and other factors not discernable from the written record, which is why this Court's well-settled principles of review state that "[t]he fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." Reed v. Commonwealth, 62 Va. App. 270, 282 (2013). Accordingly, the standard of review compels affirmance of appellant's conviction.

## IV. CONCLUSION

There is evidence in the record from which a reasonable factfinder could infer that the victim resisted the taking of her purse and that the perpetrator overcame that resistance by force directed at her person. Accordingly, the evidence is sufficient to affirm appellant's conviction for robbery.

Affirmed.