COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Causey and Bernhard

UNPUBLISHED

GARY MORTON

MEMORANDUM OPINION*

v.      Record No. 0153-24-1                            PER CURIAM
                                                        MAY 6, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Liam A. Curry, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Gary Morton of abduction and first-degree

murder in the commission of an abduction of Marie Covington.[1]  On appeal, Morton contends that

the evidence is insufficient to support his convictions.  We disagree with Morton's assertions and

affirm the trial court's judgment.[2]

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Meade v. Commonwealth*,

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court separately convicted Morton of attempted malicious wounding,
maliciously shooting into an occupied vehicle, two counts of use of a firearm, and, upon his
guilty plea, concealing a dead body.  Those convictions are not challenged in this appeal.

[2] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);
Rule 5A:27(a).

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (quoting *Gerald*, 295 Va. at 473).

Carla Covington (Carla) testified that her mother, Marie Covington (Marie), and Morton argued on August 17, 2022. Marie had requested that Morton leave, but he refused. As Morton yelled at Marie, he had a firearm on his hip. During the argument, Morton punched Marie in her stomach multiple times, dragged her out of her bed, and threw her to the floor. Morton also threw or knocked over a lamp, confiscated Marie's phone, and threatened to kill Marie, Carla, and Carla's sister, Sharnaye Covington (Sharnaye), who was also at the residence. Marie told her daughters that she was going to drive Morton to his mother's house.

As Morton and Marie left, Morton grabbed Marie's keys from her. Carla testified that Morton grabbed a second firearm as he left the house. Marie entered her car and sat in the driver's seat, but Morton opened the door, yelled at Marie, and struck her multiple times in the face. Marie then moved to the passenger seat and Morton drove off, striking another vehicle as he left. Carla called and texted Marie, but Marie never responded.

Sharnaye recalled that on August 17, Marie was preparing dinner when Marie and Morton began arguing. Morton threw the meal away. When Sharnaye heard what sounded like Morton hitting Marie, she ran downstairs and found Morton on top of Marie. Sharnaye and Carla retreated but returned downstairs after hearing more violence. Sharnaye saw that Marie was then on the floor and Morton slammed the bedroom door with such force as to damage it. Morton packed his suitcases and put them in Marie's car. Sharnaye testified that Morton told Marie, "Let's go." After Marie left the house with Morton, Sharnaye saw Morton strike Marie twice in her mouth as she sat in the car. She corroborated Carla's account of Morton speeding away as Marie appeared to be

trying to exit the car on the passenger side, striking a neighbor's car, and being unable to contact Marie. She also recalled Morton threatening to kill Marie just days before the incident.

While driving to work on August 17, Ronnie Perry saw Morton urinating while standing outside Marie's car. Morton fired a gun towards Perry's car, striking the windshield. As Perry tried to drive away, Morton followed and fired more shots. Police found bullet fragments and cartridges at both locations.

During the early morning hours on August 20, 2022, Virginia State Trooper Mills conducted a traffic stop of Morton as he was driving Marie's car. Morton stopped briefly, but then he made an illegal U-turn and sped away. Morton reached speeds of up to 115 miles per hour as he fled, and Trooper Mills saw Morton throw a magazine cartridge and a revolver from the window. Morton eventually stopped, exited the car, and fled on foot. After apprehending Morton, Trooper Mills found two semiautomatic firearms inside the vehicle. When confronted by Trooper Mills, Morton initially confirmed his identity, but he later denied that he was Morton. He also denied having driven Marie's vehicle and stated that he did not know her. Morton verbally abused Trooper Mills and other officers at the scene. Morton claimed that Perry fired a gun at him and that he armed himself and fired two shots towards Perry. He stated that as he re-entered the car, his "gun went off" and he later saw that Marie had blood running down her face. Panicked, Morton "rode around for a while" before disposing of Marie's body in the trash. He acknowledged disposing of Marie's phone and stated that he called and texted her number so that it would "seem like [he] had nothing to do with it." Morton denied that Marie was dead at the time of the incident with Perry, but he admitted that Marie was dead within 20 minutes of leaving her residence.

The police later found Marie's partially decomposed body in a trash bag in a dumpster in Norfolk. Near the body, investigators found another trash bag containing cleaning supplies, including a large bottle of bleach. Another trash bag contained a blood-stained car seat cover. The

- 3 -

police located Marie's cell phone some distance away. Marie's autopsy showed that she died from a gunshot wound to her head.

Morton admitted putting Marie's body in the trash can, but he claimed that his revolver accidentally fired after he had been shot at in Marie's car. The police did not find any evidence of a shooting where Morton claimed it had occurred. Morton stated that he placed Marie's body in the trash can because he "was scared." He denied having struck Marie or that their argument became violent. Morton stated that he was uncertain where the shooting occurred and did not see Marie when she was struck.

Morton testified to the same events at trial. He claimed that Marie willingly entered the vehicle with him and denied that he forced her by threat into the car. He stated that Marie was shot about 15-20 minutes after they left the house. He explained that he dumped Marie's body in the trash can because he knew the location was in a "bad area" and assumed no one would look for her there. He admitted that he fled to Pittsburgh, but he later returned to Norfolk to surrender to police.

The trial court convicted Morton of abduction and first-degree murder in the commission of an abduction. Morton appeals.

ANALYSIS

I. Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon

review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

## II. Abduction

Morton argues that the evidence failed to prove that he abducted Marie and therefore the evidence is insufficient to support his abduction conviction. Under Code § 18.2-47(A), anyone who "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty" is guilty of abduction. "Put simply, the *actus reus* of the crime is a taking, transporting, or detention of another, while the *mens rea* of the crime is a specific intent to deprive another of her liberty." *Brown v. Commonwealth*, 74 Va. App. 721, 730-31 (2022). A "conviction under Code § 18.2-47(A) requires only a showing of 'physical detention of a person, with the intent to deprive [her] of [her] personal liberty, by force, intimidation, or deception' without more." *Walker v. Commonwealth*, 47 Va. App. 114, 120 (2005) (quoting *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)).

"Intimidation is defined as '[u]nlawful coercion; extortion; duress; putting in fear.'" *Brown*, 74 Va. App. at 731 (alteration in original) (quoting *Bivins v. Commonwealth*, 19 Va. App. 750, 752 (1995)). "A defendant intimidates a victim if he 'put[s] [the] victim in fear of bodily harm by exercising such domination and control . . . as to . . . overbear her will.'" *Id.* (alterations in original) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)). "And intimidation can occur even in the absence of an overt 'expression of an intention to do bodily

harm.'" *Id.* at 731-32 (quoting *Sutton*, 228 Va. at 663). "Instead, a victim suffers fear of bodily harm in the abduction context if the defendant imposes 'psychological pressure on [the victim] who, under the circumstances, is vulnerable and susceptible to such pressure.'" *Id.* at 732 (alteration in original) (quoting *Sutton*, 228 Va. at 663).

Here, Carla and Sharnaye saw Morton beat their mother, Marie, and drag her to the floor. Morton had a firearm clearly visible during the entire encounter. Morton threatened to kill Marie and her daughters. He confiscated her phone and her keys. After loading his belongings into the car, Morton ordered Marie to go with him to his mother's house. He grabbed a second firearm as he left the house. He again beat Marie as she sat in the car, and he forced her to move to the passenger seat. Sharnaye saw Marie attempt to exit from the passenger side, but Morton sped off, preventing her from leaving.

"[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). We give deference to these findings "because the fact finder 'has the unique opportunity to observe the demeanor of the witnesses as they testify.'" *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)). In addition, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). The trial court could also consider Morton's prior felony convictions in assessing his credibility. *See* Code § 19.2-269. "A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." *Taylor v. Commonwealth*, 61 Va. App. 13, 31 (2012) (quoting

*Rollston v. Commonwealth*, 11 Va. App. 535, 548 (1991)). "[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022) (alteration in original) (quoting *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992)).

The trial court permissibly rejected Morton's claims and believed the testimony of Carla and Sharnaye. Morton's statements and actions demonstrated that he threatened and intimidated Marie and forcibly detained her against her will, thus proving his guilt of abduction.

### III. Murder

Morton contends that even if this Court finds that he abducted Marie, the evidence did not demonstrate that the shooting death "was not coincidental and not a consequence of the abduction." He asserts that no evidence established that the "force or intimidation continue[d] until the time of the shooting."

"Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (alteration in original) (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)).

Here, after a loud and violent argument, Morton, armed with two weapons, forced Marie into her car and prevented her from getting out. Within 15-20 minutes of their leaving the house, Marie was dead. Morton shot her inside the car, attempted to clean the vehicle, and disposed of

her body before fleeing the Commonwealth.  The evidence presented at trial provided the court with a reasonable basis to infer that the abduction was continuing when Morton shot and killed Marie.  The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Morton was guilty of abduction and first-degree murder in the commission of an abduction.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*