COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Athey and Fulton
Argued by videoconference

**PUBLISHED**

JOSEPH E. BROWN

                                                        OPINION BY
v.        Record No. 0598-21-2                 JUDGE GLEN A. HUFF
                                                        MAY 10, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHARLES CITY COUNTY
B. Elliott Bondurant, Judge

Wayne Orrell for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial in the Charles City County Circuit Court (the "trial court"),

Joseph Brown ("appellant") was convicted of abduction in violation of Code § 18.2-47. He now

appeals, first arguing the evidence was insufficient to support his conviction. Second, he

contends the trial court erred in denying his motion to disqualify the prosecutor for an alleged

conflict of interest with the victim in this case. Third, he argues that even if he abducted the

victim, Code § 19.2-59 provided him a legal justification for doing so. Finally, he claims the

prosecutor violated his due process rights by choosing to prosecute this case as a felony after

appellant rejected a misdemeanor plea offer. Because the first three arguments lack merit and

the last is waived, this Court affirms appellant's conviction.

## I.  BACKGROUND

This Court "consider[s] the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party [below]."

*Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004)). Viewed through this lens, the evidence is as follows:

*The Confrontation*

On July 10, 2020, Rhonda Russell, Charles City County's Community Development Director and Assistant County Administrator, drove to appellant's home to check whether appellant remedied a previous ordinance violation regarding an excess of inoperable vehicles that sat in his yard. Russell "drove in[to appellant's driveway] enough to see . . . significantly fewer cars" than there were at the time of the violation. Russell then drove to her next site down the street from appellant's house.

After parking her car in the next site's driveway, Russell sat in the car and took notes. While doing so, appellant approached her vehicle and tapped on her window. Russell rolled down her window, and appellant told her he was "tired of the county messing with [him]" and asked her why she was on his property a few minutes before. In response, Russell gave appellant her business card and told him to call her office to speak with her about his citation. Appellant then became irritable, cursed at Russell, and said, "[Y]ou're going to talk about this right now." Russell told appellant that she did not want to talk about the issue because appellant was upset.

Russell then put her car in reverse and attempted to leave the scene but noticed appellant's car was blocking her egress from the driveway. Russell asked appellant to move his car, but appellant refused, saying, "I'm not going to move the car. You're going to stay here and you're going to tell me what you're doing here." At this point, Russell felt she "did not" have the freedom to leave the scene and experienced her "anxiety . . . going through the roof" with her "heart . . . beating fast"—notwithstanding the fact that she was generally "not an anxious or very emotional person."

- 2 -

Russell told appellant she would call the police if appellant did not move his car, to which appellant responded that he would also call the police. Russell then tried to contact the sheriff's department, but her calls initially did not go through because she was in a rural area with poor cell service. After numerous attempts, Russell eventually got in contact with the sheriff's department and requested immediate assistance. During this call, appellant was "outside of the car[,] . . . [was] very agitated and irritable, [and was] flailing his arms."

After Russell's call, appellant also called the police, asked them to come to the scene to resolve the issue, and told the 911 dispatcher that he "got [Russell] blocked in." While appellant was talking with the dispatcher, Russell looked for a way out of the situation and ultimately escaped by driving her vehicle through the grass and a drainage ditch. She then parked on the street adjacent to the site, and from there, both appellant and Russell waited at the scene for the police to arrive and take their statements.

*Appellant's Motion to Disqualify the Commonwealth's Attorney*

Before trial, appellant moved to disqualify the entire Office of the Charles City County Commonwealth's Attorney from prosecuting the case, alleging a financial conflict of interest between Russell and that office. In his motion, appellant cited the fact that the County Administrator's office—where Russell worked—created the budget for the Commonwealth's Attorney's office.

At the hearing on appellant's motion, Russell testified that although she worked in the County Administrator's office and "prepares the Community Development department's budget for review," she had no hand in creating or working on the budget for the Commonwealth's Attorney's office. Additionally, Russell testified that on the date of this incident, she was acting in her role as the Community Development Director, not the Assistant County Administrator, as she worked two jobs within Charles City County Government.

The Commonwealth's Attorney—who happened to be the individual prosecutor in this case—represented that even though the County Administrator's office prepared the budget for his office, it was the Charles City County Board of Supervisors[1] who approved the budget, not the County Administrator's office.

The trial court found no conflict of interest and denied appellant's disqualification motion. Appellant renewed his motion at trial, but the trial court denied that motion as well.

*Appellant's Trial*

At the close of the Commonwealth's case, appellant moved to strike the evidence. Among other things, he argued that Code § 19.2-59[2] provided him a legal justification for detaining Russell. He specifically argued that the statute applied to Russell because she was a government agent who intruded onto his private property and searched for violations without a warrant. The trial court disagreed, ruling that Code § 19.2-59 did not apply to Russell and did not provide a legal justification for appellant's detention of Russell.

Appellant testified in his defense. He claimed he did not intend to abduct Russell, highlighted he made no physical contact with her, and relayed that he had suffered from seven strokes prior to his encounter with her.

The trial court found appellant guilty of abduction and sentenced him to three years' incarceration with all time suspended. At the sentencing hearing, appellant's counsel revealed

---

[1] There is no evidence in the record that Russell was employed with the Board of Supervisors.

[2] Code § 19.2-59 states in relevant part that

> [n]o officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, shall be guilty of malfeasance in office.

that the felony abduction charge was initially dismissed in general district court and that the prosecutor then obtained a true bill from a grand jury for the charge. The prosecutor responded that he offered appellant a plea deal where appellant would plead guilty to misdemeanor disorderly conduct in exchange for the Commonwealth dropping the felony abduction charge, but appellant refused.

Appellant's counsel argued the prosecutor's decision to prosecute this case as a felony after the plea negotiation stage was "horribly abusive" and remarked that appellant "exercis[ed] his [c]onstitutional right and because he did that he was punished severely."[3] Appellant's counsel did not accompany these statements with a motion to dismiss the case for prosecutorial vindictiveness.

This appeal followed.

## II. ANALYSIS

### *Sufficiency of the Evidence*

### A. Standard of Review

Appellant's first assignment of error challenges the sufficiency of the evidence to support his conviction for abduction. "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). The issue in these kinds of challenges is whether "upon review of the evidence in the light most favorable to the prosecution . . . 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)). "If there is evidence to support the conviction[],

---

[3] Trial counsel never specifically identified the constitutional right he was talking about when making this statement.

the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Synan v. Commonwealth*, 67 Va. App. 173, 185 (2017) (quoting *Courtney v. Commonwealth*, 281 Va. 363, 366 (2011)). This Court conducts a *de novo* review when interpreting a statute. *Commonwealth v. Herring*, 288 Va. 59, 66 (2014).

B. The Evidence Was Sufficient to Support Appellant's Conviction for Abduction

Appellant contends the evidence was insufficient to support his conviction for abduction. His argument primarily rests on two facts: (1) that he did not have any physical contact with Russell during their encounter and (2) that Russell eventually maneuvered around his car.[4]

A person is guilty of abduction if, "by force, intimidation or deception, and without legal justification or excuse, [he or she] seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty." Code § 18.2-47(A). Put simply, the *actus reus* of the crime is a taking, transporting, or detention of another, while the *mens rea* of the crime is a specific intent to deprive another of her liberty. *Walker v. Commonwealth*, 47 Va. App. 114, 120 (2005) ("[A] conviction under [the abduction statute] requires only a showing of physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception, without more." (citations and internal quotation marks omitted)).

A rational trier of fact could conclude appellant's conduct met both elements. First, the evidence was sufficient to find appellant committed the *actus reus* of abduction because he

---

[4] Appellant also avers his previous strokes decreased the likelihood that he detained Russell. But there is nothing in the record to indicate Russell knew appellant suffered strokes in the past or of whatever physical limitations they produced in the present. All Russell saw was an irate middle-aged man flailing his arms around, cursing at her, telling her she could not leave until the issue was resolved, and blocking her car with his own. Therefore, appellant's strokes play no part in analyzing Russell's fear of bodily harm. *Infra* pp. 7-9.

detained Russell. A defendant detains his victim by keeping the victim in a specific place "through the use of force, intimidation, or deception."[5] *Herring*, 288 Va. at 74. The trial court held that appellant detained Russell through use of intimidation rather than force or deception. So does this Court.

"Intimidation is defined as '[u]nlawful coercion; extortion; duress; putting in fear.'" *Bivins v. Commonwealth*, 19 Va. App. 750, 752 (1995) (quoting *Black's Law Dictionary* 831 (6th ed. 1990)). A defendant intimidates a victim if he "put[s] [the] victim in fear of bodily harm by exercising such domination and control . . . as to . . . overbear her will." *See Sutton v. Commonwealth*, 228 Va. 654, 663 (1985).[6] And intimidation can occur even in the absence of an overt "expression of an intention to do bodily harm." *Id.* Instead, a victim suffers fear of bodily harm in the abduction context if the defendant imposes "psychological pressure on [the victim] who, under the circumstances, is vulnerable and susceptible to such pressure." *See id.*

Here, appellant blocked Russell's vehicle in the driveway and refused to move his car to allow Russell to leave, declaring he would not let Russell depart until she explained her prior presence on his property to his satisfaction. What is more, appellant was agitated and irritable throughout the conflict, cursing at Russell and even flailing his arms at times. The trial court could have rationally seen appellant's conduct as imposing psychological pressure on Russell,

---

[5] Roughly four decades ago, the Virginia Supreme Court explained that unlike the common law crime of abduction, Code § 18.2-47 does not require the asportation of a victim from one place to another. *Scott v. Commonwealth*, 228 Va. 519, 526 (1984). In that way, the statutory crime of abduction has a broader reach than the common law crime did, a background fact that informs the conclusion this Court reaches today.

[6] True, *Bivins* and *Sutton* defined "intimidation" in the context of non-abduction statutes. 19 Va. App. at 752 (dealing with robbery statute); 228 Va. at 663 (dealing with rape statute). But "[i]t is a common canon of statutory construction that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." *Commonwealth v. Jackson*, 276 Va. 184, 194 (2008). Given the absence of that kind of legislative indication here, this Court adopts the construction of the word "intimidation" provided in *Bivins* and *Sutton* in construing the abduction statute.

especially when considering the location where the incident took place: a rural area where there were no neighbors around and the quality of the phone service was poor (indeed, Russell's phone calls to the police initially kept dropping). In the same vein, the trial court could have rationally viewed Russell as vulnerable and susceptible to appellant's psychological pressure. Russell testified that she did not feel free to leave the scene and experienced heightened anxiety that caused sweats and an increased, rapid heart rate. As the finder of fact with the "sole responsibility" to determine witness credibility, the trial court was entitled to accept Russell's testimony on this front as true. *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998).

Although Russell eventually escaped appellant's blockade by driving through grass and a ditch, that does not preclude a finding that appellant detained Russell prior to that point. *Cf. Carr v. Commonwealth*, 69 Va. App. 106, 115 (2018) ("[A victim's] eventual escape . . . d[oes] not preclude the fact finder from concluding that appellant intended to deprive [the victim] of her personal liberty at the time [of the abduction]."). The abduction statute does not contain a temporal requirement, which means a victim can be detained under the statute even if only for the briefest of moments.[7] And here, a rational trier of fact could conclude the detention occurred when appellant (1) blocked Russell's means of egress with his car; (2) engaged in (belligerent) psychologically-imposing behavior that put Russell in fear of harm; (3) did so in an area where

---

[7] There is an important limiting principle to the observation that brief detentions can satisfy abduction's *actus reus* element. Specifically, there are circumstances where a defendant's detention of a victim can be merely incidental to the commission of another crime—for example, assault, robbery, or rape. When that happens, it would violate the defendant's double jeopardy rights to try or convict the defendant for both abduction and another crime involving the incidental detention. *Brown v. Commonwealth*, 230 Va. 310, 313-14 (1985). Determining whether a detention is "incidental" to another crime is a question of law that is highly dependent on the facts of a given case. *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004). And one of the factors to determine if a detention is "incidental" to another crime is the "duration" of that detention. *Id.* at 494 (quoting *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)). This Court does not have occasion to engage in that sort of analysis here, however, because appellant does not argue the detention was incidental to another crime.

swift assistance by the police or anyone else was unlikely; and (4) consequently kept Russell where she was, even if impermanently.[8]

Likewise, a rational trier of fact could conclude appellant had the specific intent to deprive Russell of her liberty. "Intent is the purpose formed in a person's mind and may . . . be shown by circumstances." *Howard v. Commonwealth*, 207 Va. 222, 228 (1966). "Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013).

After appellant blocked in Russell's car, he informed Russell that she "was going to talk about th[e citation issue] right now" and that he would not let her leave until the two sorted out the problem. When Russell asked appellant to move his vehicle, appellant refused to do so. Additionally, appellant repeatedly said, "I got [Russell] blocked in," during his 911 call. By appellant's own language and actions, the trial court could rationally conclude he intended to restrict Russell's freedom of movement. Although appellant testified that he did not intend to detain Russell, "[i]t [was] entirely 'permissible to infer . . . that every person intends the natural and probable consequences of his or her acts.'" *Walker*, 47 Va. App. at 121 (quoting *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001)). Similarly, the trial court was also "entitled to disbelieve [appellant's] self-serving testimony and to conclude that he was lying to conceal his guilt." *Woodard v. Commonwealth*, 27 Va. App. 405, 408-09 (1998) (citing *Price v. Commonwealth*, 18 Va. App. 760, 768 (1994)).

---

[8] In discussing the detention *via* intimidation issue, this Court has refrained from deciding whether Russell's fear of harm should be viewed through a subjective lens, a purely objective one, or some mix of the two. There are three reasons for that. First, neither this Court nor the Virginia Supreme Court has issued binding authority on the question. Second, neither party in this appeal argued the inquiry should be conducted one way or the other. Finally, this Court believes the evidence just discussed is sufficient to show appellant detained Russell regardless of which lens one uses when viewing Russell's fear of harm. So, this Court leaves definitive resolution of the objective vs. subjective issue for another day.

For these reasons, a rational trier of fact could conclude appellant had the specific intent to deprive Russell of her liberty. Given that, and because the evidence supported the trial court's conclusion that appellant detained Russell through use of intimidation, the totality of the evidence supported appellant's conviction for abduction.

*Appellant's Abduction Was Not Legally Justified*

A. Standard of Review

In his third assignment of error,[9] appellant argues that Code § 19.2-59 applied to Russell and provided a legal justification for his detention of her. "With respect to issues arising from the trial court's interpretation of a statute, [this Court] appl[ies] a *de novo* standard of review." *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021).

B. Appellant's Lack of a Legal Justification in Code § 19.2-59

The abduction statute requires that to convict a defendant, a trial court must find the defendant acted "without legal justification or excuse." Code § 18.2-47(A). Appellant tried to find his legal justification[10] in Code § 19.2-59 at trial and does so again on appeal, but this Court determines that statute is of no help to him.

Code § 19.2-59 states in relevant part that "[n]o officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer." The statute then says that any person who violates it "shall be guilty of malfeasance in office" and provides the forms of relief available for the aggrieved party: compensatory and punitive damages. *Id.* By doing so, the statute creates a civil cause of action

---

[9] Although this is the third assignment of error, this Court addresses it before the second because it more closely relates to the first assignment of error.

[10] A "legal justification" is a "lawful . . . reason for one's acts or omissions." *See Taylor v. Commonwealth*, 260 Va. 683, 690 (2000) (quoting *Black's Law Dictionary* 870 (7th ed. 1999)).

- 10 -

against a government agent who searches a person, place, or thing without a proper search warrant. *Cromartie v. Billings*, 298 Va. 284, 296-97 (2020) (citing *Buonocore v. Chesapeake & Potomac Tel. Co.*, 254 Va. 469, 473 (1997)).

Even assuming without deciding that Russell was an "officer of the law or any other person" under Code § 19.2-59, and further assuming without deciding that Russell violated the statute, the statute is nonetheless unavailable to appellant as a legal justification for his abduction of Russell. By its plain terms, a person aggrieved by a violation of Code § 19.2-59 may seek only compensatory and/or punitive damages in a civil action against the violating party. In contrast to other statutes that explicitly allow for detention of wrongdoers, *see, e.g.*, Code § 18.2-105.1 (granting shopkeepers limited ability to detain suspected shoplifters), Code § 19.2-59 does not permit the aggrieved party to detain the violating official. Nor would it make sense for it to do so, given that a violation of it constitutes a "malfeasance in office," not a crime that would subject the violator to arrest. For those reasons, the trial court did not err in concluding Code § 19.2-59 did not provide a legal justification for appellant's abduction of Russell.

*The Conflict of Interest Issue*

A. Standard of Review

Appellant's second assignment of error asserts the trial court erred by denying his motion to disqualify the prosecutor for a conflict of interest. "The decision whether to disqualify a [prosecutor] in a particular case is committed to the sound discretion of the trial court." *Lux v. Commonwealth*, 24 Va. App. 561, 569 (1997). "However, whether a defendant's due process rights are violated . . . is a question of law, to which [this Court] appl[ies] a *de novo* standard of review." *Price v. Commonwealth*, 72 Va. App. 474, 488 n.5 (2020) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)).

- 11 -

B.  The Trial Court Did Not Abuse Its Discretion in Finding No Conflict of Interest

Appellant argues the trial court abused its discretion in denying his disqualification motion.  He asserts the Office of the Charles City County Commonwealth's Attorney had a pecuniary conflict of interest with Russell and that "[t]he appearance that such a financial relationship may influence the discharge of the prosecutorial duties by the prosecutor presents a perception of impropriety and thereby [is] prohibited by law and professional regulations."

A prosecutor should be disqualified "where [he or she] has some direct personal interest arising from . . . a financial interest . . . such that his [or her] objectivity and impartiality are called into question." *Lux*, 24 Va. App. at 569 (citation omitted).  This is so because a defendant has a "right to the fair minded exercise of the prosecutor's [duties]," which include "the impartial prosecution of [the defendant] and the duty to see that [the defendant] is accorded a fair trial. *Id.* at 568-69 (citation and internal quotation marks omitted).  Whether a prosecutor has a conflict of interest is a question "dependent upon the circumstances of the individual case, and the burden is on the party seeking disqualification . . . to present evidence establishing the existence of disqualifying bias or prejudice." *See Powell v. Commonwealth*, 267 Va. 107, 138 (2004).

The trial court did not abuse its discretion in finding appellant failed to meet this burden.  Appellant did not establish a financial relationship between the prosecutor and Russell, nor did he explain how the outcome of his trial would affect some financial interest the prosecutor held.  Instead, he merely asserted the existence of a financial relationship between Russell and the prosecutor because the County Administrator's office drafted the budget for the Commonwealth's Attorney's office.  But Russell testified that even though she worked in the County Administrator's office, she had no hand in creating or working with the budget for the Commonwealth's Attorney's Office.  On top of that, the Commonwealth's Attorney testified that the Board of Supervisors, not the County Administrator, *approves* the budget for his office, a fact

that further removes Russell from any conceivable financial interest the prosecutor may have had in the outcome of the case.

In light of all this, this Court cannot say the trial court's understanding of the facts and equities constituted an abuse of discretion. *See Hamad v. Hamad*, 61 Va. App. 593, 607 (2013) ("Th[e] bell-shaped curve of reasonability [underlying the abuse of discretion standard] rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie."). Accordingly, this Court leaves the trial court's denial of appellant's disqualification motion undisturbed.

*Appellant's Prosecutorial Vindictiveness Argument is Barred by Rule 5A:18*

In his final assignment of error, appellant contends the prosecutor violated his due process rights by pursuing a felony abduction charge after appellant rejected the prosecutor's offer to drop the felony in exchange for appellant pleading guilty to misdemeanor disorderly conduct. He believes the prosecutor's actions should have resulted in a dismissal of the case.

But appellant failed to preserve this argument for appeal. At his sentencing hearing, appellant's counsel did call the prosecutor's conduct "horribly abusive" and proclaimed that appellant "exercis[ed] his [c]onstitutional right and because he did that he was punished severely." However, appellant's counsel made no mention of a violation of appellant's due process rights in this context. *See Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) ("[T]he argument asserted on appeal [must] be the same as the contemporaneous argument at trial."). Nor did he move the trial court to dismiss the case based on prosecutorial vindictiveness. So, there is no "ruling" for this Court to "consider[] as a basis for reversal," *see* Rule 5A:18, which means appellant's argument that this case should have been dismissed for prosecutorial vindictiveness is waived, *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993).

## III. CONCLUSION

Appellant has not convinced this Court of any reversible error on the trial court's part. First, the evidence was sufficient to support appellant's conviction for abduction. Second, Code § 19.2-59 did not provide a legal justification for appellant's abduction of Russell. Third, the trial court did not abuse its discretion in finding no conflict of interest between Russell and the prosecutor. Finally, appellant's prosecutorial vindictiveness argument is waived. For those reasons, this Court affirms the trial court's judgment.

*Affirmed.*